RONALD D. ARENA, Bar No. 218421
CONOR D. MACK, Bar No. 253878
ARENA HOFFMAN LLP
44 Montgomery Street, Suite 3520
San Francisco, CA 94104-4828
Telephone: 415.433.1414
Facsimile: 415.520.0446
Email: rarena@arenahoffman.com
cmack@arenahoffman.com

Attorneys for Plaintiff
SOLARCITY CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLARCITY CORPORATION,<br>Plaintiff,<br>v.<br>DANIEL DORIA, an individual,<br>Defendant. | Case No. '16CV3085 JAH RBB<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016; THE CALIFORNIA UNIFORM TRADE SECRETS ACT; AND FOR BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SOLARCITY CORPORATION ("SolarCity" or "Plaintiff") alleges as follows for its Complaint against Defendant DANIEL DORIA ("Doria," "Defendant," or "Defendant Doria") for violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* ("DTSA"); for violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.* ("UTSA"); and for breach of contract.

## INTRODUCTION

1. SolarCity, the Plaintiff in this action, is in the business of manufacturing and selling solar energy products and services to a wide range of residential and commercial customers nationwide. Defendant Doria is a former SolarCity sales representative. On at least five separate occasions while Doria was still employed by SolarCity, Doria stole SolarCity's confidential customer information in blatant disregard of his agreements with SolarCity. Around the time of his termination and thereafter, Doria used SolarCity's confidential information to contact multiple existing and prospective customers of SolarCity to attempt to dissuade them from using SolarCity's products. After Plaintiff sent a cease and desist letter to Doria, Doria refused to return SolarCity's confidential information. Doria attempted to cover up his trade secret theft by falsely denying that he possessed or was using SolarCity's customer information.

2. Through an extensive investigation and the use of forensic computer analysis, Plaintiff has been able to confirm that, contrary to Doria's false denials, on numerous occasions, Defendant Doria accessed SolarCity's customer database and copied confidential information about existing and prospective customers who were not his own. Plaintiff has also been able to confirm the actual exportation (theft) of at least 1,343 of those customers and their corresponding information by Doria, though the actual scope of the theft is almost certainly much higher. Doria stole the confidential customer information by sending it to his private email address shortly before his termination on October 21, 2016.

3. Between October 21, 2016 and October 25, 2016, at least nine SolarCity customers in a variety of different states received an email relying on misleading and incorrect information warning them about using solar technology. Doria was the only person at SolarCity to have recently accessed each of these customers' information. Furthermore, each of these customers was on a list of 1,343 customers whose information was downloaded to Doria's computer, a list that was discovered through a forensic examination of Plaintiff's computer. Although SolarCity received complaints from nine customers who received the solar warning email, the number of recipients is surely much greater.

4. SolarCity has spent about ten years developing and refining its customer list and the information contained in its customer database. SolarCity has also spent millions of dollars and thousands of hours updating and refining its customer list and the information in its customer list. Doria has damaged Plaintiff's relationships with existing and potential customers by intentionally and brazenly stealing SolarCity's customer information, contacting SolarCity's customers, and attempting to cover up his unlawful actions.

5. SolarCity brings this action to enjoin Doria from any further use or disclosure of SolarCity's confidential and proprietary information, to prevent Defendant from using its confidential and proprietary information to damage its relationships with its customers, to compel Defendant to return all electronic and paper copies of documents containing confidential SolarCity information in his possession, custody or control, and to obtain an award of damages, penalties, and fees.

## PARTIES

6. Plaintiff SolarCity is a Delaware corporation with its principal place of business at 3055 Clearview Way, San Mateo, California 94402, its headquarters. SolarCity designs, manufactures, installs, maintains, monitors, leases, and sells solar energy systems to residential, commercial, government, and other customers in the United States.

7. Doria was hired by SolarCity in May 2015 as an Inside Energy Specialist based in SolarCity's Las Vegas sales territory. His primary responsibility as an Inside Energy Specialist was selling SolarCity's products and services to residential customers. Doria's employment was terminated in October 2016. Defendant Doria is a resident of the County of San Diego, California.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction of this action pursuant to the DTSA, 18 U.S.C. § 1836(c), the CFAA, 18 U.S.C. § 1030, *et seq.*, and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367.

9. Venue is proper. Defendant Doria resides in San Diego County. SolarCity does business in San Diego County. Defendant alleges upon information and belief that many of the acts or occurrences as alleged herein occurred in San Diego County.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

10. Upon commencement of his employment with SolarCity, and as a condition of employment with SolarCity, Doria signed an At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement ("Employee Agreement"). In accordance with the Employee Agreement, Doria agreed to maintain in strict confidence all confidential information belonging to SolarCity, and to use such information only for the benefit of SolarCity in carrying out his duties as a Company employee. Doria also expressly agreed that customer lists and related information were considered by SolarCity to be trade secrets and agreed to keep all customer data and customer information confidential during and after his employment. Doria's employment was terminated on October 21, 2016.

11. Starting near the end of October 2016, SolarCity received complaints from its customers that they had been contacted by an unknown individual from the address, "robadler2012@gmail.com." The email related to the customers'

purchase or contemplated purchase of solar technology and included misleading and incorrect information. The customers complained because they had only shared their contact information with SolarCity and expressed concern as to how this unknown individual had obtained their information. Although SolarCity received complaints from nine customers who received the solar warning email, the number of recipients is surely much greater.

12. After receiving the aforementioned customer complaints, SolarCity initiated an investigation to attempt to determine the source of the leaked confidential customer information. SolarCity's Compliance department worked with the Software Engineering department to identify employees who had recently accessed the records of the complaining customers. In reviewing the SolarCity employees who had accessed the complaining customers' records in the prior month, Defendant Doria was identified as the only employee who had accessed all nine customers' records. Doria accessed these customers' records in the week prior to his termination on October 21, 2016. None of these customers was one of Doria's direct customers. Doria accessed the information knowing that his employment was about to be terminated.

13. SolarCity conducted further login analysis to determine the extent of Doria's improper access to and theft of SolarCity's confidential customer information. In the month prior to his termination, Doria had accessed over 1,900 confidential customer records. The vast majority of Doria's access to these records occurred in the days immediately preceding his termination when Doria knew that his discharge was imminent. Of the 1,900 records accessed, approximately only 100 were Doria's direct customers. Doria was aware that the customer information was confidential through his agreements with SolarCity and through SolarCity's policies, discussed in greater detail herein.

14. The customer and potential customer information contained in SolarCity's customer database as alleged herein is nonpublic and confidential and proprietary to SolarCity. SolarCity's customer database is securely stored on

ARENA HOFFMAN LLP
44 Montgomery Street
Suite 3520
San Francisco, CA 94104.4828
415.433.1414

SolarCity servers. One can only access information within the database with a unique username assigned to SolarCity personnel and a strong password that must be changed every 90 days. Information about access to individual customer records in the database is stored in log files for analyzing improper access and other reported violations. It is an express violation of SolarCity's Employee Handbook to share one's username and password with anyone else. SolarCity also protects its customer database by, among other things, using confidentiality agreements with employees such as Doria, and allowing only password-protected access to its computer and database systems. SolarCity also enters into agreements with its lead generators, and these agreements also contain confidentiality provisions. Use of the confidential customer information, or the disclosure of this information to any competitor, will cause, and has caused, irreparable harm to SolarCity. Defendant is in possession of SolarCity's confidential customer database which it spent millions of dollars, thousands of hours, and many years to develop and protect.

15. Part of what has made SolarCity so successful in the solar business is its proprietary information that includes the locations of potential customers and how likely they are to purchase a rooftop solar system. Over the almost ten years since its founding, SolarCity has invested millions of dollars and thousands of hours developing, compiling and maintaining detailed information on potential and existing customers. The cost to obtain these leads, many of which are purchased from professional "lead generator" companies, is substantial. Indeed, the cost per lead can exceed $150, and at any one time SolarCity may be working with a dozen or more lead generators. SolarCity's proprietary customer and potential customer information gives the company a competitive advantage in the marketplace, and SolarCity takes reasonable steps under the circumstances, including through the use of its employment and vendor agreements, to keep this information confidential and proprietary. SolarCity has also taken legal action where necessary to protect its trade secrets.

16. After Compliance and Software Engineering were able to determine that Doria was the likely source of the confidentiality breach, SolarCity engaged the services of Discovia, an outside vendor, to conduct a forensic examination of Defendant's computer. Discovia charged SolarCity $2,700 to conduct forensic examination and analysis of Doria's computer.

17. Discovia conducted its forensic examination in November 2016. Through analysis of Doria's browser history, Discovia was able to confirm Doria's excessive access to confidential consumer information just prior to his termination. Additionally, Discovia located three documents on Doria's computer connected to an external email address. One of these documents was called "Contacts3.docx" and contained 1,343 external email addresses. Each of the email addresses corresponded with customer information accessed by Doria in the days immediately prior to his termination, including the email addresses of each customer who received the solar warning email. The document was created on October 18, 2016 and last updated on October 19, 2016.

18. Discovia's examination further discovered an email sent from Doria's computer with the subject line "Solar City False Claims." The email was dated October 1, 2016 and originated and was sent to the email address danieldoria105@yahoo.com. The language in the October 1, 2016 email was very similar to the email received by the nine customers who complained to SolarCity. Discovia's further examination further revealed a link between Defendant's laptop computer and a Yahoo! email address that had exactly the same "robadler2012" prefix as the one used to communicate false information to SolarCity's customers.

19. SolarCity's investigation further revealed that Doria emailed to himself, on or about October 4 and October 14, 2016, a spreadsheet identifying approximately 180 of SolarCity's current and prospective customers including their names, addresses, email addresses, contact and other information.

20. SolarCity alleges upon information and belief that, aware of and bitter about his pending termination, Doria stole SolarCity's confidential customer information and used that confidential information to send the solar warning email to an unknown number of SolarCity customers in an attempt to dissuade them from entering into a contract with SolarCity or to terminate their existing contracts with SolarCity. SolarCity is informed and believes that it lost business due to Doria's solar warning email.

21. All of the customer and potential customer information taken and used by Defendant, as alleged above, was confidential and proprietary to SolarCity. Defendant's use and/or disclosure of this information has caused and will continue to cause irreparable harm to SolarCity and provide its competitors with an unfair advantage in the marketplace.

22. In taking and using SolarCity's customer documents and data, as alleged above, Doria violated various written agreements and policies, including: the terms of the Offer of Employment he signed on May 1, 2015; the Employee Agreement he signed on May 1, 2015; the Conflict of Interest Guidelines he signed on May 1, 2015; the 2014 Sales Compensation Plan he signed on May 1, 2015; and other SolarCity policies and procedures.

23. Under the terms of the Offer of Employment Doria signed on May 1, he agreed, in part, to the following terms.

- "As an **Inside Energy Specialist** you will render full-time services to the Company, and you will use your best efforts, skill, and abilities to promote the Company's interests."

- "As a Company employee, you will be expected to abide by the Company's rules and standards. Specifically, you will be required to sign an acknowledgment that you have read and that you understand the Company's policy covering Business Conduct and Ethics, which are included

in the Company Handbook and you may request, in writing, a copy of the policy prior to signing this offer letter."

- "As a condition of your employment, you will also be required to sign and comply with an At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement, which requires, among other provisions, the assignment of patent rights to any invention made during your employment at the Company, and non-disclosure of proprietary information."

24. Doria executed his Confidentiality Agreement on May 1, 2015. Under that agreement, Doria agreed, in part, to the following terms.

- "*Company Information*. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company, except under a non-disclosure agreement duly authorized and executed by the Company. (¶ 2[A].)

- "I understand that "**Confidential Information**" means any non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or knowhow, including, but not limited to: research, product plans or other information regarding the Company's products or services and markets therefore; customer lists and customer contact information, buying histories, and preferences (including, but not limited to, such information relating to customers of the Company on whom I called or with whom I became acquainted during the term of my employment)..." (¶ 2[A].)

25. The Conflict of Interest Guidelines Doria signed on May 1, 2015 provide, in relevant part, as follows.

- "[A]ll officers, employees, and independent contractors must avoid activities that are in conflict, or give the appearance of being in conflict, with . . . the best interests of the Company as long as they maintain an active relationship with Company."

26. The Conflict of Interest Guidelines further list the following "potentially compromising situations that must be avoided."

- "Revealing confidential information to outsiders or misusing confidential information. Unauthorized divulging of information is a violation of this policy whether or not for personal gain and whether or not harm to the Company is intended." (¶ 1.)

- "Engaging in any other conduct that is injurious to the best interests of the Company." (¶ 11.)

27. The 2014 Sales Compensation Plan that Doria signed on May 1, 2015 provides, in part, as follows.

- "The duties of each Employee are intended to enhance to the revenue, gross margin, profitability, and reputation of the Company through professional attention to the following:" (¶ 5.)

- "Each Employee, as a full time employee of the Company, is expected to devote full attention and primary efforts to furthering the Company's business interests." (¶ 5[A].)

- "Each Employee is expected to conscientiously manage the assigned territory or Accounts and exclusively sell the products, systems, and services offered by the Company." (¶ 5[B].)

- "Each Employee is expected to perform post-sale duties which include, but are not limited to: (i) be the primary point of contact for all Customer issues or problems, (ii) help to resolve Customer problems, (iii) verify Contract terms; (iv) resell Contracts when cancellation is threatened or in jeopardy, (v) assist with the home owners association approval process as needed, (vii) encourage each Customer to provide referrals and host solar parties." (¶ 5[F].)

- "Each Employee is expected to comply with the Company's Employee Handbook, including but not limited to Section 9.6, Conducting Personal Business and Outside Employment." (¶ 5[H].)

28. SolarCity's Employee Handbook also states in plain language that employees are to maintain the confidentiality of SolarCity confidential information, including "customer" information, and that they may not divulge such information. The Handbook states, in part, as follows.

- **CONFIDENTIALITY**

- Each employee is responsible for safeguarding confidential information obtained during employment.

- While at work, employees may have access to confidential information regarding SolarCity, its suppliers, its customers, or perhaps even fellow employees. Employees have a responsibility not to reveal or divulge any such information. Access to confidential information should be on a "need-to-know" basis and must be authorized by management. Any breach of this policy will not be tolerated and legal action may be taken by SolarCity.

ARENA HOFFMAN LLP
44 Montgomery Street
Suite 3520
San Francisco, CA 94104.4828
415.433.1414

**<u>FIRST CAUSE OF ACTION</u>**

**VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016**

**(18 U.S.C. § 1836, *ET SEQ.*)**

29. The allegations of paragraphs 1 through 28, inclusive, are incorporated herein by reference as if set forth fully below.

30. Plaintiff owned and possessed and developed over about ten years certain nonpublic, confidential, proprietary and trade secret information, including a list of active and prospective customers of SolarCity, their contact information, and other information related to the customers that enabled SolarCity to evaluate the probability of conducting business with the customer.

31. Plaintiff made reasonable effort and took reasonable steps in order to keep secret the information, including by: maintaining the information in a secure server that could only be accessed on a VPN with a username and password; by having its employees, contractors, and other vendors with access to this information sign agreements to agree to maintain the confidentiality of the information; by maintaining policies and procedures to maintain the confidentiality of the information; by taking steps to determine whether breaches of the information contained in the database occurred and to address and take action to respond to actual or potential breaches; and by taking legal action where necessary to protect the information.

32. This confidential, proprietary, and trade secret information involves and relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce. The customer database that was unlawfully accessed by Defendant, and from which Defendant unlawfully downloaded customer information, contains the names, addresses, and other information related to SolarCity's customers nationwide.

33. This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily

ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

34. In violation of Plaintiff's rights, Defendant misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein.

35. Defendant's misappropriation of the confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

36. Defendant has failed to return Plaintiff's confidential and trade secret information and has attempted to conceal his theft of such information. On information and belief, if Defendant's conduct is not remedied, and if Defendant is not enjoined, Defendant will continue to disclose, and use for his own benefit and to Plaintiff's detriment, Plaintiff's trade secret information.

37. As the direct and proximate result of Defendant's conduct, Plaintiff has suffered and, if Defendant's conduct is not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

38. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Plaintiff's business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

39. Plaintiff has a substantial likelihood of success on the merits because of Defendant's blatant, willful, knowing, malicious, and/or reckless misappropriation and use of trade secrets through the improper and unlawful methods, as alleged herein.

40. Defendant's acts were malicious, fraudulent, and oppressive, and were done with conscious disregard of Plaintiff's rights in that Defendant

ARENA HOFFMAN LLP
44 Montgomery Street
Suite 3520
San Francisco, CA 94104.4828
415.433.1414

misappropriated Plaintiff's trade secret information intentionally and knowingly and with a deliberate intent to benefit himself and injure Plaintiff's business. Plaintiff is entitled to its damages, in an amount to be determined at trial, as well as injunctive relief, royalties, and an award of statutory exemplary damages and attorney's fees.

**<u>SECOND CAUSE OF ACTION</u>**

**VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT**

**(CAL. CIV. CODE § 3426, *ET SEQ.*)**

41. The allegations of paragraphs 1 through 40, inclusive, are incorporated herein by reference as if set forth fully below.

42. Plaintiff owned and possessed and developed over about ten years certain nonpublic, confidential, proprietary and trade secret information, including a list of active, former, and prospective customers of SolarCity, their contact information, and other information related to the customers that enabled SolarCity to evaluate the probability of conducting business with the customer.

43. Plaintiff made reasonable efforts and took reasonable steps in order to keep secret the information, including by: maintaining the information in a secure server that could only be accessed on a VPN with a username and password; by having its employees, contractors, and other vendors with access to this information sign agreements to agree to maintain the confidentiality of the information; by maintaining policies and procedures to maintain the confidentiality of the information; by taking steps to determine whether breaches of the information contained in the database occurred and to address and take action to respond to actual or potential breaches; and by taking legal action where necessary to protect the information.

44. This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

45. In violation of Plaintiff's rights, Defendant misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein.

46. Defendant has failed to return Plaintiff's confidential and trade secret information, and has attempted to conceal his theft of such information. On information and belief, if Defendant's conduct is not remedied, and if Defendant is not enjoined, Defendant will continue to disclose, and use for his own benefit and to Plaintiff's detriment, Plaintiff's trade secret information.

47. As the direct and proximate result of Defendant's conduct, Plaintiff has suffered and, if Defendant's conduct is not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

48. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Plaintiff's business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

49. Plaintiff has a substantial likelihood of success on the merits because of Defendant's blatant, willful, knowing, malicious and/or reckless misappropriation and use of trade secrets through the improper and unlawful methods, as alleged herein.

50. Defendant's acts were malicious, fraudulent, and oppressive, and were done with conscious disregard of Plaintiff's rights, all within the meaning of California Civil Code Section 3294, in that Defendant misappropriated Plaintiff's trade secret information intentionally and knowingly and with a deliberate intent to benefit himself and injure Plaintiff's business. Plaintiff is entitled to its damages, in an amount to be determined at trial, as well as injunctive relief, royalties, and an

ARENA HOFFMAN LLP
44 Montgomery Street
Suite 3520
San Francisco, CA 94104.4828
415.433.1414

award of exemplary damages under Cal. Civ. Code § 3426.3(c), and punitive damages and attorney's fees pursuant to California Civil Code Sections 3426.3(c) and 3426.4.

**THIRD CAUSE OF ACTION**

**BREACH OF CONTRACT**

51. The allegations of paragraphs 1 through 50, inclusive, are incorporated herein by reference as if set forth fully below.

52. Doria entered into a series of agreements upon the commencement of his employment in May 2015, including the terms of his Offer of Employment, the Employee Agreement, the Conflict of Interest Guidelines, and the 2014 Sales Compensation Plan. Doria was also provided with a copy of SolarCity's Employee Handbook. Doria acknowledged receipt of the aforementioned documents and agreed to their terms by signing them on or about May 1, 2015. Doria worked for SolarCity continuously, and received compensation from SolarCity, after entering into these agreements until SolarCity terminated Doria in October 2016, as alleged above. Doria's agreements are enforceable as between him and SolarCity.

53. In taking SolarCity's confidential and proprietary information, Doria breached the foregoing agreements. Doria also fraudulently accepted compensation from SolarCity on the false pretense that he would be loyal to his employer and not steal and disclose his employer's trade secrets and confidential information.

54. SolarCity has suffered, and will continue to suffer, irreparable harm as a result of Doria's breaches of contract. Plaintiff has also suffered monetary damages in an amount to be proven at trial because of Doria's breach.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SolarCity Corporation demands judgment against Defendant as follows:

**<u>FIRST CAUSE OF ACTION</u>**

**VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016**

**(18 U.S.C. § 1836, *ET SEQ.*)**

1. In accordance with applicable law, including 18 U.S.C. § 1835, awarding Plaintiff a Temporary Restraining Order, a Preliminary Injunction Order, and a Permanent Injunction as follows: (a) ordering Defendant to immediately return all copies of SolarCity's electronic files and paper copies containing SolarCity customer and potential customer information, or other Confidential Information in his possession; (b) ordering the permanent removal, deletion and destruction of all copies of SolarCity's electronic files and paper copies containing SolarCity customer and potential customer information, or other Confidential Information transmitted to Defendant's computers or personal email accounts or otherwise in Defendant's possession, subject to the supervision of SolarCity so as to preserve evidence of all such files or information; (c) enjoining Defendant from using, copying or disclosing any information relating to SolarCity that is not generally known to the public; and (d) ordering such other injunctive relief as the Court deems appropriate.

2. Awarding Plaintiff restitution in an amount to be determined at trial.

3. Awarding Plaintiff disgorgement in an amount to be determined at trial.

4. Awarding Plaintiff royalties in an amount to be determined at trial.

5. Awarding Plaintiff compensatory damages in an amount to be determined at trial.

6. Awarding Plaintiff exemplary damages in an amount not more than two times the amount of damages awarded hereunder.

7. Awarding Plaintiff penalties pursuant to 18 U.S.C. § 1832.

8. Awarding Plaintiff attorneys' fees, costs, and interest.

9. Awarding Plaintiff such other relief as the Court deems appropriate.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT**

**(CAL. CIV. CODE § 3426, *ET SEQ.*)**

1. In accordance with applicable law, including Cal. Civil Code § 3426.2, awarding Plaintiff a Temporary Restraining Order, a Preliminary Injunction Order, and a Permanent Injunction as follows: (a) ordering Defendant to immediately return all copies of SolarCity's electronic files and paper copies containing SolarCity customer and potential customer information, or other Confidential Information in his possession; (b) ordering the permanent removal, deletion and destruction of all copies of SolarCity's electronic files and paper copies containing SolarCity customer and potential customer information, or other Confidential Information transmitted to Defendant's computers or personal email accounts or otherwise in Defendant's possession, subject to the supervision of SolarCity so as to preserve evidence of all such files or information; (c) enjoining Defendant from using, copying or disclosing any information relating to SolarCity that is not generally known to the public; and (d) ordering such other injunctive relief as the Court deems appropriate.

2. Awarding Plaintiff restitution in an amount to be determined at trial, pursuant to applicable law, including Cal. Civil Code § 3426.3(a).

3. Awarding Plaintiff compensatory damages in an amount to be determined at trial, pursuant to applicable law, including Cal. Civil Code § 3426.3(a).

4. Awarding Plaintiff disgorgement in an amount to be determined at trial, pursuant to applicable law, including Cal. Civil Code § 3426.3(a).

5. Awarding Plaintiff royalties in an amount to be determined at trial, pursuant to applicable law, including Cal. Civil Code § 3426.3(b).

ARENA HOFFMAN LLP
44 Montgomery Street
Suite 3520
San Francisco, CA 94104.4828
415.433.1414

6. Awarding Plaintiff exemplary damages in an amount not more than two times the amount of damages awarded hereunder, pursuant to applicable law, including Cal. Civil Code § 3426.3(c).

7. Awarding Plaintiff attorneys' fees, costs, and interest, pursuant to applicable law, including Cal. Civil Code § 3426.4.

8. Awarding Plaintiff such other relief as the Court deems appropriate.

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT

1. Awarding Plaintiff compensatory damages in an amount to be determined at trial.

2. Awarding Plaintiff such other relief as the Court deems appropriate.

Dated: December 23, 2016

*/s/ Ronald D. Arena*
RONALD D. ARENA
ARENA HOFFMAN LLP
Attorneys for Plaintiff
SOLARCITY CORPORATION

## DEMAND FOR JURY TRIAL

Plaintiff SolarCity Corporation hereby demands a jury trial on those issues triable by a jury.

Dated: December 23, 2016

*/s/ Ronald D. Arena*
RONALD D. ARENA
ARENA HOFFMAN LLP
Attorneys for Plaintiff
SOLARCITY CORPORATION