

FILED

Dec 21 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ judep _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOLARCITY CORPORATION,

                    Plaintiff,

v.

DANIEL DORIA,

                    Defendant.

AND RELATED COUNTERCLAIMS

Case No.:  16cv3085-JAH (RBB)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL [ECF NOS. 69, 71]; GRANTING PLAINTIFF'S REQUEST FOR THE ENTRY OF A PROTECTIVE ORDER [ECF NO. 75]; DENYING PLAINTIFF'S REQUEST TO STAY DISCOVERY INTO DEFENDANT'S COUNTERCLAIM [ECF NO. 75]; AND DENYING PLAINTIFF'S AND DEFENDANT'S REQUESTS FOR SANCTIONS [ECF NOS. 71, 75].**

      Defendant Daniel Doria's Motion to Compel Further Responses to Requests for Production Responsive Documents and for Sanctions (the "Motion to Compel") was filed nunc pro tunc to October 18, 2017 [ECF Nos. 68, 69, 70, 71].  On October 27, 2017, Plaintiff SolarCity filed an opposition to Doria's Motion to Compel, and it requests that the Court enter a protective order, stay discovery into Doria's Counterclaim, and sanction

1

Doria. (See Opp'n 4-5, 9, ECF No. 75.)[1] Defendant's Reply was filed nunc pro tunc to November 6, 2017 [ECF Nos. 76, 77]. Shortly thereafter, the Court issued a minute order requiring the parties to supplement their pleadings by providing the disputed requests for production and responses [ECF No. 79]. The Court also ordered Plaintiff to file a detailed privilege log if it was withholding any responsive documents on the basis of privilege [Id.]. Pursuant to the Court's order, SolarCity filed the requests for production and responses on November 14, 2017 [ECF No. 82], and its privilege log on November 21, 2017 [ECF No. 85].

For the reasons discussed below, Defendant Doria's Motion to Compel [ECF Nos. 69, 71] is **GRANTED in part** and **DENIED in part**, and Plaintiff's and Defendant's respective requests for sanctions [ECF Nos. 69, 71, 75] are **DENIED**. The Court **GRANTS** SolarCity's request for the entry of a protective order and **DENIES** its request to stay discovery into Doria's Counterclaim [ECF No. 75].

## I. FACTUAL BACKGROUND

Plaintiff SolarCity, a manufacturer and seller of solar energy products and services, employed Defendant Daniel Doria as a sales representative from May 2015, until his termination on October 21, 2016. (Compl. 2-4, ECF No. 1.) On December 23, 2016, SolarCity filed this action alleging that "[o]n at least five separate occasions while Doria was still employed by SolarCity, Doria stole SolarCity's confidential customer information . . . ." (Id. at 2.) Defendant Doria is alleged to have used the information to contact Plaintiff's existing and prospective customers in an "attempt to dissuade them from using SolarCity's products." (Id.) Plaintiff claims that Defendant stole contact information for at least 1,343 customers by accessing its confidential customer database, copying the information, and sending it to his personal e-mail address. (Id.) SolarCity further alleges that Doria "used that confidential information to send the solar warning

---

[1] The Court will cite to documents as paginated on the electronic case filing system.

email to an unknown number of SolarCity customers in an attempt to dissuade them from entering into a contract with SolarCity or to terminate their existing contracts with SolarCity." (Id. at 8.) Plaintiff contends that as a result, its reputation and relationships with existing and potential customers were damaged, and it lost business; and that Defendant's conduct violated his employment agreements with Plaintiff. (See id. at 3, 8-11.) SolarCity asserts causes of action for violation of the Defend Trade Secrets Act, the California Uniform Trade Secrets Act, and breach of contract; it seeks injunctive relief, restitution, disgorgement, royalties, compensatory and exemplary damages, penalties, attorneys' fees, costs, and interest. (Id. at 2, 12-19.)

## II. PROCEDURAL BACKGROUND

On December 27, 2016, SolarCity filed an Application for Temporary Restraining Order and Request for Order to Show Cause re Preliminary Injunction [ECF No. 3]. United States District Judge John A. Houston granted Plaintiff's application for a Temporary Restraining Order on January 11, 2017, and enjoined Defendant Doria from (1) "altering, destroying, or disposing of any evidence or other materials" related to this action; (2) "failing to take all necessary steps to preserve documents, data," and other materials relating to the action; and (3) "directly or indirectly accessing, using, disclosing, or making available" Plaintiff's customer data. (See Order Granting TRO 2-3, ECF No. 15.) On January 31, 2017, Judge Houston issued an Order Granting Plaintiff's Motion for Preliminary Injunction with the same restrictions [ECF No. 22].

Doria answered SolarCity's Complaint on February 21, 2017 [ECF No. 28], and the Court subsequently issued a Scheduling Order Regulating Discovery and Other Pre-trial Proceedings [ECF No. 39]. Defendant's Motion for Leave to File Amended Answer and Counter-Claim and Application for Temporary Restraining Order and Request for Order to Show Cause re Preliminary Injunctive Relief were filed nunc pro tunc to May 3, 2017 [ECF No. 37]. On August 30, 2017, Judge Houston granted both motions and enjoined SolarCity's "senior and upper level management" from "making disparaging

remarks or causing others to make any disparaging remarks regarding the pending case, Defendant, or Defendant's business." (Order Granting Prelim. Inj. 2, ECF No. 56.)

Defendant's Amended Answer and Counter-Claim for Declaratory Judgment Demand for Damages was filed nunc pro tunc to October 16, 2017 [ECF No. 67]. Doria alleges that SolarCity defrauded its clients by "causing them to believe that SolarCity net-metering agreements cannot change" and "omitting virtually all information regarding the financial instrument . . . known as Solar Renewal Energy Certificates or SREC's from the information distributed to clients." (Am. Answer & Countercl. 12, ECF No. 67.) Further, Defendant Doria claims that Plaintiff defrauded its employees by "devising a plan to avoid a traditional restructure or 'layoff'" by manipulating the company's sales performance requirements and lead distribution. (Id. at 13.) He also contends that SolarCity's Team Lead Guy Zubia assaulted him at work; the assault was witnessed by multiple individuals and recorded by video surveillance; and that SolarCity investigated the assault and subsequently terminated Zubia. (Id. at 14-15.) Additionally, Defendant alleges that shortly after his termination, Plaintiff "announced through a 'SolarCity Live' or 'SolarCity T.V. Event' a one time 'get out of jail free card' to individuals who came forward regarding trade secret theft they knew about or participated in[,]" and that Lynden Rive[2] stated during the event that he "intended to prosecute to the fullest extent of the law, anyone that had been accused of such violations." (Id. at 26.) Finally, Doria maintains that his employment agreement with SolarCity required arbitration of "all matters regarding Trade Secret disputes" and that SolarCity breached the agreement by filing this action. (Id. at 16.) Defendant alleges causes of action he describes as breach of contract; "violation of the FLSA employer retaliation"; "violation of the FTC fraud

---

[2] Plaintiff's pleadings and requests for production indicate that Mr. Rive was SolarCity's CEO at the time he allegedly made the statement. (See Mem. P. & A. Supp. Mot. Compel 3, ECF No. 71; Suppl. Decl. Mack Attach. #1, 8, ECF No. 82.)

and deceptive practices"; "violations of the WARN Act"; "civil conspiracy, concert of action"; and violation of California Civil Code Sections 45 and 46. (Id. at 24-37.)

On August 25, 2017, Doria served SolarCity with thirty requests for production. (Opp'n Attach. #1 Decl. Mack 1, ECF No. 75.) Plaintiff responded to Defendant's requests on September 27, 2017. (Id. at 3.) SolarCity agreed to produce documents responsive to twenty requests, produced 2,774 pages of documents, objected to the remaining ten requests, and withheld additional responsive documents until the entry of a protective order governing the use and disclosure of confidential information. (Id.; see also Reply 13-14, ECF No. 77.)

On November 8, 2017, Plaintiff filed a motion to dismiss each of the causes of action in Defendant's Counterclaim for failure to state a claim. (Pl.'s Mot. Dismiss Countercl., ECF No. 78.) District Judge Houston issued a minute order setting January 22, 2018, as a hearing date on the motion. (See id.)

## III. LEGAL STANDARDS

### A. Motion to Compel

A party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial to be discoverable. Id. Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that may be in the case. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978) (footnote and citation omitted)). District courts have broad discretion to determine relevancy for discovery purposes and to limit the scope of discovery. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002); see also Fed. R. Civ. P. 26(b)(2)(C) (allowing courts to limit discovery where it would be unreasonably cumulative or

duplicative, or can be obtained from a more convenient, less burdensome, or less expensive alternate source; the requesting party has had ample opportunity to obtain discovery; or the discovery sought is beyond the scope of Rule 26(b)(1)).

Federal Rule of Civil Procedure 37 enables the propounding party to bring a motion to compel responses to discovery. Fed. R. Civ. P. 37(a)(3)(B). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26 of the Federal Rules of Civil Procedure. Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995). The party opposing discovery bears the burden of resisting disclosure. See DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002); Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998).

### B. Pro Se Litigants

"In general, pro se representation does not excuse a party from complying with a court's orders and with the Federal Rules of Civil Procedure." Hupp v. San Diego County, Civil No. 12cv0492 GPC (RBB), 2014 WL 1404510, at *2 (S.D. Cal. Apr. 10, 2014) (citing Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 856-57 (8th Cir. 1996)). Accordingly, parties who choose to represent themselves are expected to follow the rules of the court in which they litigate. Bias v. Moynihan, 508 F.3d 1212, 1223 (9th Cir. 2007) (quoting Carter v. Comm'r, 784 F.2d 1006, 1008-09 (9th Cir. 1986) ("Although pro se, [a litigant] is expected to abide by the rules of the court in which he litigates.")). "[W]hile pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." Jourdan v. Jabe, 951 F.2d 108, 109 (6th Cir. 1991).

### IV. DISCUSSION

Defendant seeks an order compelling Plaintiff to "serve further responses to [his] requests for production, produce responsive documents and allow reasonable inspection . . . ." (Mem. P. & A. Supp. Mot. Compel 2; ECF No. 71.) Doria contends that SolarCity refused to provide the requested discovery and delayed drafting a

protective order. (See Reply 2, 5, 7, 16, ECF No. 77.) He also asks the Court to sanction Plaintiff for the expenses he incurred in connection with bringing the motion. (Mem. P. & A. Supp. Mot. Compel 2, 15-16, ECF No. 71.) SolarCity argues that Doria's Motion to Compel should be denied because it is procedurally deficient, and it asserted valid objections to the requests at issue. (Opp'n 5-10, ECF No. 75.) Plaintiff also asks the Court to enter a protective order and sanction Defendant. (Id. at 10-11.)

## A.    Plaintiff's Request to Enter a Protective Order

Plaintiff requests that the Court enter its proposed protective order. (Id. at 10-11 (citing Fed. R. Civ. P. 26(c), 37(a)(5)(B).) SolarCity claims that Doria refused to stipulate to the protective order it proposed "or any other" protective order, and Doria's refusal to agree to a protective order precludes further production. (See id. at 2, 4, 11; id. Attach. #1 Decl. Mack 3.) Plaintiff asserts that the proposed protective order is warranted in this trade secret action to protect its confidential information, while permitting Defendant access to discovery he seeks. (Id. at 2, 11.)

Doria contends that SolarCity unjustifiably delayed drafting a protective order.[3] (See Reply 2-5, 7, 16, ECF No. 77.) Defendant states that although he is willing to enter into a protective order, he will not stipulate to an order providing "great advantage" to Plaintiff, and that he "concluded" that a "model court order . . . will not suffice without a reasonable court intervention, and potential modification." (Id. at 5, 9, 17, 23.)

Federal Rule of Civil Procedure 26(c) allows a party from whom discovery is sought to move for a protective order. Fed. R. Civ. P. 26(c)(1). For good cause, the court may issue a protective order "specifying terms . . . for the disclosure or discovery"; "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery

---

[3] Doria cites Plaintiff's e-mail dated April 5, 2017, stating, "[W]e have not finished drafting the proposed protective order and will send that over hopefully this week." (Reply 28, ECF No. 77.) He asserts that despite the parties' numerous communications during May–July 2017, SolarCity did not provide a protective order draft. (Id. at 3-5.) Defendant further alleges that on August 10, 2017, he e-mailed Plaintiff's counsel, Ron Arena, requesting the draft, and on October 11, 2017, Arena finally forwarded the draft to Doria. (Id. at 5.)

7

to certain matters"; or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ." Id. "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). The court has broad discretion to determine whether a protective order is appropriate and what degree of protection is warranted. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

Although Doria indicates that he is willing to enter into a protective order, he refused to stipulate to the protective order proposed by SolarCity. (See Reply 17, ECF No. 77.) The parties' pleadings include Plaintiff's proposed protective order, (Opp'n Attach. #2, 6-15, ECF No. 75), and two paragraphs of Defendant's proposed "sample" language, (Reply 44, ECF No. 77). SolarCity contends that its proposed protective order is modeled after the Southern District of California's Model Protective Order. (Opp'n 11, ECF No. 75.) A federal district court's "model protective order, upon which the parties have based their own proposed protective orders, has been approved by the court and governs discovery unless the court enters a different protective order." Barnes and Noble, Inc. v. LSI Corp., No. C 11–02709 EMC (LB), 2012 WL 601806, at *1 (N.D. Cal. Feb. 23, 2012). SolarCity alleges that it modified the model order to account for Doria's pro se status, but neither discusses nor identifies any of its proposed modifications.

The Court has reviewed the Model Protective Order and Plaintiff's proposed protective order. SolarCity's proposed order adds the following language as paragraphs two and three to the Court's Model Protective Order:

> 2. The term "Highly Confidential" will mean and include any information which belongs to a Designating Party who believes in good faith that the Disclosure of such information to another Party or non-Party would create a substantial risk of serious financial or other injury that cannot be avoided by less restrictive means.

3. "Highly Confidential Materials" will mean and include any Documents, Testimony, or Information, as defined below, designated as "Highly Confidential" pursuant to the provisions of this Protective Order.

(Opp'n Attach. #2, 7, ECF No. 75.) Without describing its rationale, SolarCity also seeks to replace a "CONFIDENTIAL-FOR COUNSEL ONLY" designation in the Model Protective Order with a "HIGHLY CONFIDENTIAL-FOR IN CAMERA REVIEW ONLY" designation. (See id. at 8, 10-12.)

SolarCity, as the party seeking the inclusion of its proposed confidentiality designation in the protective order, bears the burden of establishing good cause for the provision. See Rivera v. NIBCO, Inc., 384 F.3d 822, 827 (9th Cir. 2004); Lindsey v. Elsevier Inc., Case No.: 16-cv-00959-GPC (DHB), 2016 WL 8731471, at *5 (S.D. Cal., Aug. 19, 2016). Other than stating that it modified the Model Protective Order to account for Defendant's pro se status, Plaintiff does not provide any explanation or legal authority to support its proposed confidentiality designation. (See Reply 10-11, ECF No. 77.)

Doria's pro se status is a factor to consider in drafting a protective order, and the Court is mindful that Doria is litigating this case without legal counsel. By proposing to replace a "CONFIDENTIAL-FOR COUNSEL ONLY" designation contained in the Model Protective Order with a "HIGHLY CONFIDENTIAL-FOR IN CAMERA REVIEW ONLY" provision, SolarCity, in essence, is asking the Court to review documents that would have been produced and used in this litigation by Doria's counsel, if he had retained counsel. The Court is not Doria's legal representative and cannot litigate on his behalf.

Additionally, the Model Protective Order's "CONFIDENTIAL-FOR COUNSEL ONLY" provision does not preclude the use of the information by the party seeking disclosure; rather, it limits the individuals with access to the information. SolarCity's proposed language is not narrowly tailored to recognize this distinction.

Further, in cases involving "trade secrets or other confidential commercial information" the court is required to "balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims." Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc., 242 F.R.D. 552, 555 (C.D. Cal. 2007) (citing Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992)); see also 6 James Wm. Moore et al., Moore's Federal Practice § 26.105[8][a], at 26-550 (3d ed. 2017) ("To demonstrate good cause under [Rule 26(c)(1)(G)], the party seeking the protective order must show that the information sought is a trade secret or other confidential information, and that the harm caused by its disclosure outweighs the need of the party seeking disclosure.") (footnote omitted). The district court must "examine factually all the risks and safeguards surrounding inadvertent disclosure." Brown Bag Software, 960 F.2d at 1470. The court should consider "the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures," and whether the receiving party is "involved in 'competitive decisionmaking'[.]" Id. (citing U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)).

**1. The risk to SolarCity of inadvertent disclosure**

"A risk of inadvertent disclosure that cannot be adequately mitigated by a protective order is a factor in limiting access to confidential information." Barnes and Noble, Inc., 2012 WL 601806, at *2 (citing U.S. Steel Corp., 730 F.2d at 1468). The key factor in this determination is whether the party seeking disclosure engages in "competitive decisionmaking," which entails "advising on decisions about pricing or design 'made in light of similar or corresponding information about a competitor.'" Brown Bag Software, 960 F.2d at 1470 (citing U.S. Steel Corp., 730 F.2d at 1468).

Doria worked for SolarCity as a sales representative in its Las Vegas territory from May 2015, until October 21, 2016. (See Compl. 2, 4, ECF No. 1.) His exhibits indicate that he has been receiving pay checks from "Vivint Solar Developer, LLC" since at least January 23, 2017. (See Reply 21, ECF No. 77; id. at 68-72.) Although Plaintiff contends that Doria's discovery requests seek confidential information, (see Opp'n 3, ECF No. 75),

it has not presented any evidence indicating that Doria should be precluded from obtaining the requested information because he is performing any "competitive decision-making" functions, such as advising his new employer about marketing and/or business strategy, product design, development, and product pricing, or engaging in a competitive analysis. See Barnes and Noble, Inc., 2012 WL 601806, at *3 (considering those factors in analyzing whether a company's in-house counsel was engaged in "competitive decision-making"). "Nor does [Doria's] proximity to competitive decisionmakers necessarily confer that status on him." Id. at *4. Furthermore, Doria is now working in a different geographical market. (See Reply 21, ECF No. 77 (containing Defendant Doria's representation that he resided in Nevada during the events giving rise to this suit, and moved to California on November 1, 2017).)

The protective order proposed by Plaintiff requires the recipients of "Confidential Information" to agree in writing to be bound by the terms of the protective order, to hold all "Confidential Information" in confidence, use the information "only for purposes" of this action, and "take reasonable precautions to prevent the unauthorized or inadvertent disclosure of such information." (Opp'n Attach. #2, 12, 15, ECF No. 75.) The terms of the protective order therefore provide additional safeguards against disclosure, and minimize any potential harm from inadvertent disclosure. Accordingly, SolarCity failed to establish that there is an unacceptable risk of disclosure that would warrant denying Doria's access to highly confidential information.

### 2. The potential prejudice to Doria from nondisclosure

Prejudice can be established where the protective order "actually prejudice[s] presentation of the moving party's case." Lindsey, 2016 WL 8731471, at *4 (citing Intel Corp. v. VIA Technologies, Inc., 198 F.R.D. 525, 528 (N.D. Cal. 2000)). Plaintiff's proposed "HIGHLY CONFIDENTIAL-FOR IN CAMERA REVIEW ONLY" designation would preclude Defendant from obtaining, reviewing, and using documents with that designation. Doria needs to know what information forms the basis of SolarCity's claims so that he may adequately assess the claims and the scope of potential

11

damages, meaningfully defend against the claims, engage in settlement discussions, as
well as litigate his counterclaims. See Barnes and Noble, Inc., 2012 WL 601806, at *4-5
(finding prejudice from nondisclosure where the party seeking disclosure claimed that it
required confidential information to manage litigation and "make a realistic assessment"
of the opposing side's "infringement claims and the scope of potential damages[]").
Doria's ability to litigate will be severely prejudiced by SolarCity's proposed
confidentiality designation in the protective order. See id. at *5; Lindsey, 2016 WL
8731471, at *4 (finding prejudice to plaintiff, where defendant's proposed confidentiality
designation would have precluded plaintiff from reviewing documents with that
designation, including defendant's financial information and agreements relevant to
plaintiff's claims); see also Profil Institut fur Stoffwechselforschung GmbH v. Prosciento,
Inc., Civil No. 16cv1549-LAB(BLM), No. 73, slip op. at 7 (refusing to designate the
allegedly misappropriated information or data as "Highly Confidential-Outside Counsel's
Eyes Only" in a trade secret misappropriation action between direct competitors).

### 3. Conclusion

Having considered and balanced the parties' interests, the Court concludes that
SolarCity has not established good cause for the inclusion of a "HIGHLY
CONFIDENTIAL-FOR IN CAMERA REVIEW ONLY" designation in the parties'
protective order. See Lindsey, 2016 WL 8731471, at *1-2, 5 (finding that defendant did
not establish good cause for the inclusion in the protective order of "Attorneys Eyes
Only" designation, covering documents that plaintiff deemed "highly confidential and
sensitive and or/trade secrets"); see also Mad Catz Interactive, Inc. v. Razor USA, Ltd.,
No. 13CV2371–GPC (JLB), 2014 WL 4161713, at *5 (S.D. Cal. Aug. 19, 2014) (finding
that plaintiff's general counsel's role would not "give rise to an unacceptable risk of
disclosure such that he should be denied access to [defendant's] highly confidential
information[]"). The Court has modified the protective order proposed by Plaintiff and
separately issues a protective order to govern this case; an unexecuted copy is attached as
Exhibit 1 to this Order.

**B.**   **Plaintiff's Request for Discovery Stay**

Plaintiff SolarCity asks the Court to stay discovery into Defendant's Counterclaim until Judge Houston rules on Plaintiff's motion to dismiss. (See Opp'n 9, ECF No. 75; see also Pl.'s Mot. to Dismiss Countercl. 1, ECF No. 78.) In support of its request, SolarCity argues that Doria seeks highly confidential information regarding claims that will "likely" be dismissed. (Opp'n 9, ECF No. 75.) Defendant Doria responds that Plaintiff's request should be denied because a stay would delay discovery, and the requested information relates to his counterclaims and defenses. (See Reply 9, 18-20, ECF No. 77.)

In its responses to Defendant's thirty document requests, SolarCity contends that each request, "to the extent" that it calls for information related to Doria's proposed counterclaims, is premature because the counterclaims are subject to dismissal. (See Suppl. Decl. Mack Attach #1, 19-48, ECF No. 82.) "Objections to discovery requests cannot be conclusory. Proper objections 'show' or 'specifically detail' why the disputed discovery request is improper." Collins v. Landry's, Inc., Case No. 2:13-cv-01674-JCM-VCF, 2014 U.S. Dist. LEXIS 83003, at *8 (D. Nev. June 17, 2014) (citing Blankenship v. Heart Corp., 519 F.2d 418, 429 (9th Cir. 1975)). "Boilerplate, generalized objections are inadequate and tantamount to making no objection at all." Id. at *6-7.

In its Opposition, SolarCity identifies six requests for production that it contends only relate to Doria's counterclaims: 1, 8, 12, 23, 24, and 29. (See Opp'n 7-9, ECF No. 75.) In its response to request number 1, Plaintiff stated that "it has been unable to locate responsive documents following a reasonably diligent search in conformity with the Federal Rules of Civil Procedure." (Suppl. Decl. Mack Attach. # 1, 19, ECF No. 82.) This may be a sufficient response. Bryant v. Armstrong, 285 F.R.D. 596, 603 (S.D. Cal. 2012). For request 23, SolarCity responds that "it is unaware of documents it understands to be responsive to this request and that it will produce copies of documents signed by Defendant in connection with his employment." (Suppl. Decl. Mack Attach. #1, 41, ECF No. 82.) If responsive items do not exist, their production cannot be

compelled. But Doria is correct, the discovery sought in the listed document requests is not only relevant to his counterclaims.

"[A] party seeking a stay of discovery carries the heavy burden of making a strong showing why discovery should be denied." Clark v. New Century Mortg. Co., No. 2:17–cv–01065–JAD–VCF, 2017 U.S. Dist. LEXIS 165266, at 3 (D. Nev. Oct. 4, 2017) (quoting Ministerio Roca Solida v. U.S. Dep't of Fish & Wildlife, 288 F.R.D. 500, 503 (D. Nev. 2013)). When deciding whether a stay of discovery should be imposed pending a motion to dismiss, among other things, the Court determines whether it is "'convinced' that the plaintiff [or counterclaimant] is unable to state a claim for relief." Id. (citing Rae v. Union Bank, 725 F.2d 478, 481 (9th Cir. 1984)). The Court has taken a "preliminary peek" at the merits of SolarCity's motion to dismiss and concluded that a stay of discovery in response to the document requests is not warranted. See id. at *3-4. Furthermore, the relevance of the discovery that Doria seeks is broader than SolarCity contends.

The deadline to serve written discovery passed on November 6, 2017, and fact discovery will close on January 8, 2018. (Scheduling Order 1-2, ECF No. 39.) In light of the procedural posture of the case, a discovery stay into Defendant's Counterclaim will significantly delay discovery, and Plaintiff has not carried its heavy burden of making a strong showing that discovery should be stayed while its motion to dismiss is pending. Accordingly, the Court **DENIES** SolarCity's request to stay discovery.

## C. **Defendant's Motion to Compel**

Defendant seeks to compel Plaintiff to supplement responses to his requests for production numbers 1-30. (Mem. P. & A. Supp. Mot. Compel 2, 5-7; ECF No. 71 (citing Fed. R. Civ. P. 34 and 37).) Doria asserts that the requests seek relevant information, are narrowly tailored, not burdensome, and are proportionate to the needs of the case. (Id. at 8-14.) He acknowledges that SolarCity produced approximately 2,774 pages of documents, but states that the production comprised of "hundreds of virtually blank pages" that were heavily redacted, and contained duplicative and nonresponsive

information. (See Reply 6, 13-14, ECF No. 77; see also Mem. P. & A. Supp. Mot. Compel 2, 14, ECF No. 71.) Defendant Doria further maintains that Plaintiff's objections to the requests were boilerplate and unsupported, and Plaintiff did not produce a privilege log describing the documents it withheld as privileged. (See Mem. P. & A. Supp. Mot. Compel 2, 14-15, ECF No. 71; Reply 6, ECF No. 77.)

SolarCity argues that the Motion to Compel fails on procedural grounds and lacks merit. (Opp'n 5-10, ECF No. 75.) It claims that Defendant's requests seek proprietary information, and information related to Defendant's Counterclaim that was not filed at the time Plaintiff served its responses. (Id. at 2-3.) SolarCity states that because it served "fully compliant" responses, produced responsive documents, and agreed to supplement its production after the entry of a protective order, the Motion to Compel should be denied. (Id. at 2-10.)

### 1. Procedural challenges

Plaintiff argues that Defendant's Motion to Compel fails on procedural grounds because it was not filed and served within the time frame prescribed by Federal Rule of Civil Procedure 6(d) and Civil Local Rule 7.1.e.4. (Id. at 5.) SolarCity also contends that the motion lacks supporting documentation and that Doria's pro se status does not excuse his alleged failure to comply with procedural rules. (Id. (citing Fed. R. Civ. P. 6(c)(2)).) Defendant responds that Plaintiff fails to explain why the Motion to Compel is procedurally deficient. (Reply 11, ECF No. 77.)

Other than citing Federal Rule of Civil Procedure 6(c)(2) and (d) and Civil Local Rule 7.1.e.4, SolarCity does not provide any facts or arguments to support its contention that Doria's motion is procedurally barred. (See Opp'n 5, ECF No. 75.) On August 25, 2017, Defendant served Plaintiff with thirty requests for production, and Plaintiff provided its responses on September 27, 2017. (Id. Attach. #1 Decl. Mack 2-3.) The Court's scheduling order states that "[a]ll motions for discovery shall be filed no later than thirty (30) days following the date upon which the event giving rise to the discovery dispute occurred[,]" and for "written discovery, the event giving rise to the discovery

dispute is the service of the response." (Scheduling Order 2, ECF No. 39.) Accordingly, Doria's motion had to be filed within thirty days of SolarCity's September 27, 2017 responses, which was October 27, 2017. (See id.) On October 16, 2017, Defendant informed the Court of the discovery disputes that are the subject of this motion, and the Court issued a minute order requiring Defendant Doria to file his motion by October 17, 2017. (Mins. 1, October 16, 2017, ECF No. 63.) The Motion to Compel was filed nunc pro tunc to October 16, 2017 [ECF No. 68]; in any event, it was timely filed. Further, although Doria did not initially provide the disputed requests for production and SolarCity's responses, the alleged deficiency was cured when those documents were filed on the docket [ECF No. 82].

### 2. Merits

On August 29, 2017, Judge Houston granted Doria's motion to amend his answer and file a counterclaim [ECF No. 56]. The Court notes that Plaintiff objected to all of Defendant's requests on September 27, 2017, claiming that the requests were premature because they related to Defendant's proposed counterclaim. (Suppl. Decl. Mack Attach. #1, 18-49, ECF No. 82.) Doria filed his Counterclaim on October 18, 2017. (Am. Answer & Countercl., ECF No. 67.)

The filing of Defendant's Counterclaim triggered Plaintiff's duty to supplement its discovery responses pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. The rule provides that a party who has responded to a request for production "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1); see also Medina v. County of San Diego, Civil No. 08cv1252 BAS (RBB), 2014 WL 4793026, at *12 (S.D. Cal. Sept. 25, 2014) (reminding the responding party of its duty to supplement or correct incomplete or inaccurate discovery responses). As discussed above, the Court declines to stay discovery. Consequently, if SolarCity withheld any documents on the

16cv3085-JAH (RBB)

basis that they were only relevant to Doria's counterclaims, it must supplement its production, subject to the protective order, by **January 8, 2018**.

### a. Requests for production numbers 2-6, 11, 13-14, 16-21, 23, 25-28, and 30

Plaintiff SolarCity states that it agreed to produce documents responsive to Defendant's requests numbers 2-6, 11, 13-14, 16-21, 23, 25-28, and 30, and produced 2,774 pages of responsive documents. (Opp'n 6, ECF No. 75; id. Attach. #1 Decl. Mack 4.) Doria asserts that SolarCity's responses were deficient. (See Mem. P. & A. Supp. Mot. Compel 2-3, 14-15, ECF No. 71; Reply 6, 9, 13-14, ECF No. 77.) The majority of Plaintiff's responses to the requests state that Plaintiff will produce documents "following entry of a protective order governing the use and disclosure of confidential information." (Suppl. Decl. Mack Attach. #1, 30, 32, 35-37, 43-45, 48-49, ECF No. 82.) Simultaneously with this Order, the Court is entering a protective order; SolarCity is required to produce the withheld responsive documents subject to the terms of the protective order. Further, because Defendant alleges that Plaintiff produced "hundreds" of heavily redacted pages, (see Reply 6, 13-14, ECF No. 77; see also Mem. P. & A. Supp. Mot. Compel 2, 14, ECF No. 71), the Court orders Plaintiff to review the redactions, remove the redacted information, and produce the documents to Defendant subject to the provisions in the protective order. Finally, if SolarCity withheld any documents on the basis that they were only relevant to Doria's counterclaims, the documents should be produced. As discussed below, the Court **GRANTS** the Motion to Compel as to requests numbers 2-6, 11, 13-14, 16-21, 23, 25-28, and 30.

### b. Request for production number 1

The request seeks "SolarCity Live television event recording" during which Plaintiff's former CEO Lyndon Rive "on a company-wide broadcast to 12,000 or more people, threatened to ruin the life of and bankrupt, anyone that he feels violated the mutual Trade Secret Agreement." (Suppl. Decl. Mack Attach. #1, 8, ECF No. 82.) SolarCity objected that the request was vague, ambiguous, overbroad, unduly

burdensome, and premature; and sought irrelevant, confidential, private, proprietary, and privileged information. (Id. at 19.) Plaintiff also stated that "it has been unable to locate responsive documents following a reasonably diligent search in conformity with the Federal Rules of Civil Procedure." (Id.)

Doria argues that the video was made shortly after his termination and is highly relevant because it establishes Plaintiff's "malicious" intentions and behavior. (Mem. P. & A. Supp. Mot. Compel 3, ECF No. 71.) Plaintiff's counsel states in his declaration that after a "reasonable diligent search, Plaintiff was unable to locate the video." (Opp'n Attach. #1 Decl. Mack 4, ECF No. 75.) SolarCity also asserts that the requested "Facebook" video is only relevant to Doria's counterclaims, and would likely be subject to a protective order. (Opp'n 7, 10, ECF No. 75.) Defendant replies that he is not seeking a "Facebook" video, but rather a "'SolarCity Live' Event" video, and that Plaintiff has not disputed the existence of the video. (Reply 10, 16, 22, ECF No. 77.)

The videotaped statement allegedly was made by SolarCity's CEO shortly after Doria's termination. If it exists, the requested video is relevant and should be produced pursuant to the parties' protective order. Although Plaintiff asserts that it could not locate the video, its pleadings indicate that it may have been searching for a different video than the one requested by Defendant Doria. (See id. at 10, 16, 22; see also Opp'n 7, 10, ECF No. 75.) Accordingly, if SolarCity cannot locate the "SolarCity Live event" video described in Doria's Reply, SolarCity should state so under oath. See 7 James Wm. Moore, et al., Moore's Federal Practice, § 34.13[2][a], at 34-57 (3d ed. 2017) (providing that when a party responds to a document request with an answer, as opposed to production or an objection, the party must answer under oath) (footnote omitted); see also Bryant, 285 F.R.D. at 603 ("If there are no other responsive documents in [d]efendant's possession, custody, or control, after conducting this further attempt to locate records, [the party resisting discovery] must state so under oath and describe efforts [the party] made to locate responsive documents.") (citing Vazquez–Fernandez v. Cambridge Coll., Inc., 269 F.R.D. 150, 155 (D.P.R. 2010))). Accordingly, the Court **GRANTS**

Defendant's motion as to request number 1.  SolarCity is **ORDERED** to either produce the requested video or provide a sworn declaration describing its efforts to locate the item.

### c. Requests for production numbers 10 and 15

Request number 10 seeks all documents relevant to Plaintiff's allegation that "information was exported from Plaintiff's servers, <u>post</u> termination" including "all information that indicates Defendant exported any <u>proprietary</u> information from Plaintiff's secure servers" after Doria's termination.  (Suppl. Decl. Mack Attach. #1, 10, ECF No. 82.)  Request for production number 15 asks for documents relevant to SolarCity's allegation in the Complaint regarding Doria's "psychological state when refusing to return information."  (<u>Id.</u> at 11.)  Plaintiff asserted the same objections as it did in response to request number 1, and it also stated that the requests were burdensome because they required Plaintiff to create documents that did not exist.  (<u>Id.</u> at 27-28, 32-33; <u>see also id.</u> at 19.)  Additionally, SolarCity stated that it was "unaware of documents responsive" to the above requests.  (<u>Id.</u> at 28, 33.)

Doria explains that request number 15 seeks evidence SolarCity relied on to allege that he was "bitter about his pending termination" and "attempting to conceal" his alleged theft.  (<u>See</u> Mem. P. & A. Supp. Mot. Compel 11, ECF No. 71; Reply 22, ECF No. 77.)  Defendant otherwise generally argues that SolarCity's responses to the above requests were deficient.  (<u>See</u> Mem. P. & A. Supp. Mot. Compel, ECF No. 71.)  SolarCity responds that it is unaware of any documents responsive to the requests, and that Doria is not entitled to discovery of documents that SolarCity does not possess.  (Opp'n 10, ECF No. 75.)

Plaintiff has provided a copy of its discovery responses and a declaration under the penalty of perjury supporting its assertion that it is unaware of any documents responsive to requests for production numbers 10 and 15.  (<u>See id.</u> Attach. #1 Decl. Mack 5; Suppl. Decl. Mack Attach. #1, 27-28, 32-33, ECF No. 82.)  The Court therefore **GRANTS in part** Doria's motion to compel as to requests for production numbers 10 and 15.  (<u>See</u>

Fed. R. Civ. P. 34(a)(1) (limiting discovery to "documents in the responding party's possession, custody, or control.").)

### d. Request for production number 7

Request number 7 seeks: "All e-mail and text-message communications, between staff affected by the injunctive relief order granted by the Honorable John A. Houston, as it relates to Defendant's counter-claims, including but not limited to, relevant e-mail and text message communications of Director Gary Algood, and RSM Brian Dickens" dating back to October 21, 2016. (Suppl. Decl. Mack Attach. #1, 9, ECF No. 82.) SolarCity objected on the same grounds as it did in response to request number 1, and that the request was unduly burdensome because it required SolarCity to create documents. (Id. at 25; see also id. at 19.)

Defendant argues in his Motion to Compel that he seeks information regarding "the extent of damage caused by Plaintiff's violation of defamation laws, as referenced in the relief requested prior and granted by the Courts." (Mem. P. & A. Supp. Mot. Compel 9, ECF No. 71.) Plaintiff responds that the request seeks privileged communications between SolarCity and its counsel regarding this case, which are protected by the attorney-client privilege and the work product doctrine. (Opp'n 8, ECF No. 75.) It also contends that the request was premature when it was served, because it was directed at Defendant's proposed counterclaim. (Id.)

It appears that Doria is referencing Judge Houston's August 30, 2017 order enjoining SolarCity's "senior and upper level management" from "making disparaging remarks or causing others to make any disparaging remarks regarding the pending case, Defendant, or Defendant's business." (Order Granting Prelim. Inj. 2, ECF No. 56.) Among his counterclaims, Doria alleges defamation by Plaintiff and seeks communications between SolarCity's upper management, including Director Gary Algood and Regional Sales Manager Brian Dickens, after Doria's termination. Further, because the counterclaims were filed after Plaintiff served its response, request number 7 is no longer premature; additionally, the items sought are relevant. SolarCity does not

explain why it would need to "create" the requested text messages and e-mails. Accordingly, the Court overrules the above objections. If there are no responsive text messages or e-mails, Plaintiff should state so under oath and describe its efforts to locate responsive documents. See Bryant, 285 F.R.D. at 603.

Plaintiff also objects to the request on the ground of privilege. The Court therefore will address the application of both the attorney-client privilege and the work product protection doctrine.

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995) (quoting Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) (quoting Weil v. Inv./ Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981)). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." Fisher v. United States, 425 U.S. 391, 403 (1976). It applies "only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client." Griffith, 161 F.R.D. at 694 (quoting Tornay, 840 F.2d at 1428).

For a communication to be protected by the attorney-client privilege, eight essential elements are considered:

(1) Where legal advice of any kind is sought
(2) from a professional legal adviser in his capacity as such,
(3) the communications relating to that purpose,
(4) made in confidence
(5) by the client,
(6) are at his instance permanently protected
(7) from disclosure by himself or by the legal adviser,
(8) unless the protection be waived.

1 | Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977).

2 | For work-product, Federal Rule of Civil Procedure 26(b)(3)(A) states that

3 | "[o]rdinarily, a party may not discover documents and tangible things that are prepared in

4 | anticipation of litigation or for trial by or for another party or its representative (including

5 | the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ.

6 | P. 26(b)(3)(A). Nevertheless, these materials may be discovered if "(i) they are otherwise

7 | discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for

8 | the materials to prepare its case and cannot, without undue hardship, obtain their

9 | substantial equivalent by other means." Id. But even when substantial need for work

10 | product has been shown, the Court must still "protect against disclosure of the mental

11 | impressions, conclusions, opinions, or legal theories of a party's attorney or other

12 | representative concerning the litigation." Id. (b)(3)(B).

13 | The burden is on the party asserting the protection of the work product doctrine to

14 | demonstrate that the withheld documents are protected from discovery. See 6 James

15 | Wm. Moore et al., Moore's Federal Practice, § 26.70[5][a], at 26-454 (3d ed. 2017)

16 | (footnote omitted). "[T]he party seeking work product protection must establish that the

17 | material is a document or tangible thing prepared in anticipation of litigation for that

18 | party." Id. at 26-454 to 26-455 (footnote omitted). "A mere allegation that the work

19 | product rule applies is insufficient to invoke its protection." Id. at 26-455 (footnote

20 | omitted). Rather, "[t]he protection applies 'if the prospect of litigation is identifiable

21 | because of specific claims that have already arisen.'" QST Energy, Inc. v. Mervyn's, No.

22 | C-00-1699MJJEDL, 2001 WL 777489, at *5 (N.D. Cal. May 14, 2001) (quoting Conner

23 | Peripherals, Inc. v. W. Dig. Corp., No. C93–20117 RMW/EAI, 1993 WL 726815, at *4

24 | (N.D. Cal. June 8, 1993)). "The test is whether 'the document can fairly be said to have

25 | been prepared or obtained because of the prospect of litigation.'" Id.

26 | In this case, SolarCity's privilege log does not list any communications between

27 | Director Gary Algood and Regional Sales Manager Brian Dickens, although it lists

28 | communications dated between October 25, 2016, and December 9, 2016, sent from

"Attorneys, <u>Managers</u> and Members of the Legal Department at SolarCity Corporation"
to "Confidential SolarCity customer[s], and Attorneys, <u>Managers</u> and Members of the
Legal Department at SolarCity Corporation, Attorneys, staff and consultants from Arena
Hoffman, LLP, and Discovia" containing e-mail strings concerning SolarCity's customer
complaint(s) "regarding release of confidential, personal information and subsequent
investigation into matter conducted to assist in anticipated or pending litigation regarding
collection." (<u>Id.</u> at 3 (emphasis added).)

SolarCity bears the burden of establishing that any documents withheld from
production are protected from disclosure by the attorney-client privilege or the attorney
work product doctrine.  Although the Court requested that Plaintiff supplement its
opposition to Doria's motion with a privilege log, (<u>see</u> ECF No. 79), SolarCity's
subsequent filing is deficient, (<u>see</u> ECF No. 85).

SolarCity makes conclusory assertions that Doria seeks items protected from
discovery by the attorney-client privilege and attorney work product doctrine.  It fails to
set forth with particularity the specific facts as to each document that would support its
claims that items are protected from disclosure by the attorney-client privilege or attorney
work product doctrine.  Plaintiff's privilege log is inadequate.  <u>See</u> <u>e.g.</u>, <u>Safeco Inc. Co.</u>
<u>of Am. v. M.E.S., Inc.</u>, 289 F.R.D. 41, 47-48 (E.D.N.Y. 2011) (stating that privilege log
should set forth specific facts and not rely on conclusory assertions).  Nor has SolarCity
provided the Court with "evidentiary submissions to fill in any factual gaps." <u>Id.</u> at 48.

For these reasons, Plaintiff has not carried its burden of showing that either the
attorney-client privilege or the attorney work product doctrine applies.  Doria's motion to
compel the production of documents in response to request number 7 is **GRANTED**.

### e. Requests for production numbers 8 and 12

Request number 8 seeks "[a]ll documentation and/or surveillance footage of the
physical altercation that resulted in [f]ormer SolarCity Team Lead Guy [Zubia's]
termination, and Doria's return to work[,]" including witness statements.  (Suppl. Decl.
Mack Attach. #1, 10, ECF No. 82.)  Request for production number 12 asks for all

documents relevant to Plaintiff's contention that it had no obligation to honor its arbitration agreement with Defendant. (Id.) SolarCity objected and asserted the identical objections it raised in response to request number 1 described above. (Id. at 25-26, 29; see also id. at 19.) Plaintiff also stated that the requests were unduly burdensome because they required the creation of documents that did not exist. (Id. at 26, 29.)

Doria contends in his motion that request number 8, among other things, seeks "specifics of the physical assault, from former Team Lead Guy [Zubia]." (Mem. P. & A. Supp. Mot. Compel 9, ECF No. 71.) Defendant further asserts that request number 12 seeks the evidence that SolarCity relied on "when stating to the courts, that they had no obligation to arbitrate when choosing to file this claim." (Id. at 10.) SolarCity responds that the requests relate to Doria's counterclaims that were not filed at the time of SolarCity's responses. (Opp'n 8, ECF No. 75.)

Defendant alleges in his Counterclaim that Plaintiff's Team Lead Zubia assaulted him at work; the assault was witnessed by multiple individuals and recorded by a video surveillance; and that after investigating the incident, Plaintiff terminated Mr. Zubia. (Am. Answer & Countercl. 14-15, ECF No. 67.) The requested documents and video are therefore relevant and should be produced to Doria subject to the parties' protective order. Likewise, because Doria alleges that SolarCity breached its contractual agreement to arbitrate by filing this suit [id. at 16], the requested documents are relevant and should be produced subject to the protective order. Accordingly, the Court **GRANTS** Defendant's motion as to requests numbers 8 and 12.

### f. Request for production number 9

Request number 9 seeks "[a]ll documents as it relates to Plaintiff's contention that the financial risks discussed in the communication in question, are 'false and misleading'." (Suppl. Decl. Mack Attach. #1, 10, ECF No. 82.) SolarCity objected on the same grounds it did in response to request number 1, and stated that the request was burdensome. (Id. at 26-27; see also id. at 19.)

Doria contends in his Motion to Compel that the request seeks evidence that SolarCity relied on when alleging that he made false and misleading statements. (Mem. P. & A. Supp. Mot. Compel 9, ECF No. 71.) Plaintiff argues in its opposition that the request is vague because there are "multiple communication at issue" in this case, and Defendant fails to identify which "communication" he is referring to. (See Opp'n 9, ECF No. 75; id. Attach. #1 Decl. Mack 5.) SolarCity also asserts that the request seeks information protected by the attorney-client privilege and the work product doctrine. (Opp'n 9, ECF No. 75.) Defendant replies that "I have challenged [Plaintiff's] ability to produce the communications they claim to have caused them damages. They have failed to provide those communications . . . ." (Reply 20-21, ECF No. 77.) He further states that SolarCity fails to establish that the communications are protected by the work product doctrine. (Id. at 21.)

Federal Rule of Civil Procure 34 requires requests for production to "describe with reasonable particularity each item or category of items to be inspected[.]" Fed. R. Civ. P 34(b)(1)(A); see also 7 James Wm. Moore, et al., Moore's Federal Practice, § 34.11[3], at 34-29 (3d ed. 2017) ("The 'reasonable particularity' standard is not susceptible to precise definition. The test is whether a reasonable person would know what documents or things are called for in the request.") (footnotes omitted). Request number 9 does not describe what "communication in question" it seeks, and Defendant's pleadings refer to multiple communications. (See Reply 20-21, ECF No. 77 (stating that Defendant seeks "communications [SolarCity] claim to have caused them damages" and that SolarCity "failed to provide those communications[.]"). The Court therefore finds that the request is vague and **DENIES** Doria's motion to compel as to request number 9.

### g. Request for production number 22

Request number 22 seeks "[a]ny documentation supporting Plaintiff's argument that Defendant could have existed in the state of California during the dates mentioned in 'COMPLAINT'." (Suppl. Decl. Mack Attach. #1, 13, ECF No. 82.) Plaintiff objected on the same grounds as it did in response to request number 1. (Id. at 40; see also id. at 19.)

SolarCity also stated that "documents reflecting Defendant's San Diego residence during times relevant to the complaint are within Defendant's possession, custody or control and are therefore equally available to Defendant." (Id.)

Doria alleges in his motion that the request seeks evidence that SolarCity relied on when alleging that he "resided, or existed, in the State of California during the dates in question." (Mem. P. & A. Supp. Mot. Compel 12, ECF No. 71.) Plaintiff responds that the requested documents are in Defendant's possession, custody or control, and that the requested discovery is therefore not proportional to the needs of the case. (See Opp'n 10, ECF No. 75; id. Attach. #1 Decl. Mack 5.) Defendant replies that he resided in Nevada "on the dates in question" and moved to California on November 1, 2017; and that Plaintiff therefore fails to establish that the alleged misconduct took place in California. (Reply 21, ECF No. 77 (citing id. at 72-76).)

"A court may refuse to order production of documents of public record that are equally accessible to all parties." 7 James Wm. Moore, et al., Moore's Federal Practice, § 34.12[5][b], at 34-53 (3d ed. 2017) (footnote omitted). "However, production from the adverse party may be ordered when it would be excessively burdensome . . . for the requesting party to obtain the documents from the public source rather than from the opposing party." Id. (footnote omitted). SolarCity states that Doria seeks documents in his possession, custody, or control that are equally available to him. (See Opp'n 8, ECF No. 75; Mack Decl. at 5.) Although this is true, items in Doria's possession will not establish that SolarCity was aware of their contents. Defendant is entitled to discover the bases for Plaintiff's statements. Accordingly, the Motion to Compel production of documents in response to request 22 is **GRANTED**.

### h. Request for production number 24

Request for production number 24 seeks the following:

All documents referencing changes to security protocol for Plaintiff's internal databases. This should include but is not limited to the date and time any new security measures went into effect for internal databases "SalesForce", and "SolarWorks", and how the changes affected Plaintiff's

26

employees' ability to obtain access to any information concealed, as a result of the change. Plaintiff should include without limitation, all non-privilege[d] documents, referencing Plaintiff's motive behind the change. This information should be easily searchable.

(Suppl. Decl. Mack Attach #1, 14, ECF No. 82.) Plaintiff objected on the same grounds as it did in repose to request number 1, and stated that the request was burdensome. (Id. at 42; see also id. at 19.)

Doria contends in the Motion to Compel that the request seeks evidence supporting SolarCity's contention that it took reasonable steps to secure the e-mail addresses at issue in the internal "SolarWorks" database. (Mem. P. & A. Supp. Mot. Compel 13, ECF No. 71.) Plaintiff objects that the request seeks confidential and proprietary information about its internal databases, and that the request was premature at the time it was made, because it related to Defendant's "then-nonexistent counterclaim." (Opp'n 8, ECF No. 75.) Doria replies that the requested information is relevant to his defenses. (See Reply 18-19, ECF No. 77.)

As an initial matter, Defendant's request expressly seeks nonprivileged documents, and the Court overrules Plaintiff's objection based on privilege. (See Suppl. Decl. Mack Attach. #1, 14, ECF No. 82.) Further, Doria contends in his Answer that SolarCity did not take "necessary steps to protect the information from the database known as SolarWorks or to properly inform employees as to the detailed definition of a Trade Secret, inside the signed Employment Agreement." (Am. Answer & Countercl. 6, ECF No. 67.) The Court therefore finds that the requested information is relevant and not premature. "[T]rade secrets have widely been held to be discoverable upon appropriate findings and with an appropriate protective order[.]" Nat'l Acad. of Recording Arts & Sciences, Inc. v. On Point Events, LP, 256 F.R.D. 678, 681 (C.D. Cal. 2009) (alterations in original) (quoting MDK, Inc. v. Mike's Train House, Inc., 27 F.3d 116, 120 (4th Cir.), cert. denied, 513 U.S. 1000 (1994)); see also BrightEdge Tech., Inc. v. Searchmetrics GmbH., Case No. 14-cv-01009-HSG (MEJ), 2017 WL 5171227, at *2 (N.D. Cal. Nov. 8,

16cv3085-JAH (RBB)

2017) (ordering production of the "SugarCRM database" and the underlying documents referenced in the database subject to the parties' protective order). Accordingly, the Court **GRANTS** Defendant's motion as to request number 24. Plaintiff is ordered to produce documents responsive to the request subject to a protective order.

### i. Request for production number 29

Request number 29 seeks "[a]ll documents containing the word 'grandfather' or 'grand' or 'grand-father' or 'grandfathering' or 'father', or any variation thereof, making reference to this term" supporting "Plaintiff's denial, that Plaintiff intentionally instructed their agents and representatives to provide information Plaintiff had good cause to know was false, and would cause imminent financial harm to those clients who had relied on this false information, regarding 'grandfathering', in the State of Nevada." (Suppl. Decl. Mack Attach. #1, 15, ECF No. 82.) SolarCity objected on the same grounds as it did in response to request number 1, and stated that the request was unduly burdensome. (Id. at 47-48; see also id. at 19.)

Doria argues in his motion that he requests information regarding SolarCity's utilization of the term "grandfathering" by their Energy Specialists to defraud SolarCity's employees and investors. (See Mem. P. & A. Supp. Mot. Compel 14, ECF No. 71.) Plaintiff responds that the request seeks information supporting Defendant's counterclaim that was not filed at the time of Plaintiff's responses, and that Defendant has no standing to assert his counterclaim. (Opp'n Attach. #1 Decl. Mack 6, ECF No. 75.)

Doria's Counterclaim contains allegations that SolarCity defrauded its clients by "causing them to believe that SolarCity net-metering agreements cannot change, and that despite future legislative changes, the terms of their agreement are such that their financial position regarding rates and compensation cannot be changed." (Am. Answer & Countercl. 12, ECF No. 67.) Accordingly, the requested information is relevant. Further, Plaintiff does not provide any evidence establishing undue burden. SolarCity, as the party opposing disclosure, has the burden to show that discovery should not be allowed. Oakes, 179 F.R.D. at 283 ("The party who resists discovery has the burden to

show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."). Plaintiff has not carried its burden of explaining and supporting its objections to Defendant's request. <u>See id.</u> The Court therefore **GRANTS** Doria's motion to compel, and orders SolarCity to produce all nonprivileged documents responsive to request number 29.

### j. Conclusion

For the reasons above, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Compel [ECF Nos. 69, 71]. All documents ordered produced are to be provided to Doria by **January 8, 2018**, and all further responses that are to be made under oath are due by **January 8, 2018**. Documents are to be produced pursuant to the protective order limiting use and dissemination of the items.

### D.   Plaintiff's and Defendant's Respective Requests for Sanctions

SolarCity seeks $5,000 in sanctions against Doria as reimbursement for attorneys' fees and costs incurred in opposing the Motion to Compel. (Opp'n 4-5, 11, ECF No. 75.) Plaintiff alleges that Defendant's motion was unjustified because it agreed to produce, and did produce, documents responsive to twenty of the discovery requests at issue, and properly objected to the remaining ten requests. (<u>Id.</u> at 2, 10-11 (citing Fed. R. Civ. P. 37(a)(5)(B).)   SolarCity further maintains that there are no circumstances rendering the award of sanctions unjust in this case. (<u>Id.</u> at 11.)

Defendant asks the Court to sanction Plaintiff $12.55 for expenses he incurred in connection with bringing the Motion to Compel.[4] (Mot. Compel 2, ECF No. 69; Mem. P. & A. Supp. Mot. Compel 2, 15-16, ECF No. 71.) Doria asserts that the requested sanctions are reasonable and warranted in light of SolarCity's refusal to meet and confer in good faith, and to supplement its production. (<u>See id.</u> at 2; <u>see also</u> Reply 19, ECF No.

---

[4] He calculates the requested amount of sanctions as follows:  $ 2.00 for downtown courthouse parking, $ 1.00 for vehicle depreciation, $ 0.70 for fuel, $ 2.00 for printer toner and wear and tear, $ 1.25 for paper, $ 4.00 for certified mail, $ 1.50 for USPS envelope, and $ 0.10 for paper clips. (Mot. Compel 2, ECF No. 69.)

77.) Defendant also argues that he complied with his discovery obligations and properly brought the Motion to Compel, and that Plaintiff's request for sanctions should therefore be denied. (Id. at 23-24.)

Rule 37(a)(5)(C) of the Federal Rules of Civil Procedure provides that "[i]f the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5). "By the very nature of its language, sanctions imposed under Rule 37 must be left to the sound discretion of the trial judge." O'Connell v. Fernandez–Pol, 542 Fed. App'x. 546, 547-48 (9th Cir. 2013) (citation omitted). "[T]he burden of showing substantial justification and special circumstances is on the party being sanctioned." Cruz v. Aurora Loan Servs., LLC, Case No. 3:15-cv-00585-LB, 2016 WL 2621795, at *5 (N.D. Cal. May 9, 2016) (quoting Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994)).

In this case, the Court grants in part and denies in part Defendant's Motion to Compel. In light of the filing of Doria's Counterclaim and the parties' inability to stipulate to a protective order, the Court finds that the parties' positions were substantially justified and declines to sanction either party. See Franklin v. Smalls, Civil No. 09cv1067 MMA(RBB), 2012 WL 5077630, at *32 (S.D. Cal. Oct. 18, 2012) ("A request for discovery is 'substantially justified' under Rule 37 if reasonable people could differ on the matter in dispute.") (citing Reygo Pacific Corp. v. Johnston Pump Co., 680 F.2d 647, 649 (9th Cir. 1982); United States EEOC v. Caesars Entm't, Inc., 237 F.R.D. 428, 435 (D. Nev. 2006)). Accordingly, the Court **DENIES** SolarCity's and Doria's respective requests for sanctions.

/ / /
/ / /
/ / /
/ / /
/ / /

# V. CONCLUSION

For the reasons set forth above, the Court enters the following **ORDERS**:

1.  Plaintiff's request to enter a protective order [ECF No. 75], as modified by the Court, is **GRANTED**.  Simultaneously with the filing of this order, the Court will enter a protective order governing the parties' disclosure and use of information obtained through discovery;

2.  SolarCity's request to stay discovery into Doria's Counterclaim [ECF No. 75] is **DENIED**;

3.  Defendant's Motion to Compel [ECF Nos. 69, 71] is **GRANTED in part** and **DENIED in part.**  Plaintiff is to produce items requested in response to requests for production numbers 2-6, 8, 11-14, 16-30 no later than **January 8, 2018**.  In response to request for production number 1, SolarCity is **ORDERED** to either produce the requested video or provide a sworn declaration describing its efforts to locate the video no later than **January 8, 2018**.  Similarly, with respect to request numbers 7, 10, 15, and 23, Plaintiff should either produce the requested e-mails, text messages, and documents, or state under oath that there are no responsive documents and describe the efforts it undertook to locate them by **January 8, 2018**.  Defendant's motion to compel is **DENIED** as to request number 9; and

4.  SolarCity's and Doria's respective requests for sanctions [ECF Nos. 71, 75] are **DENIED.**

**IT IS SO ORDERED.**

Dated: December 21, 2017

Hon. Ruben B. Brooks
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLARCITY CORPORATION,<br><br>                    Plaintiff,<br><br>v.<br><br>DANIEL DORIA,<br><br>                 Defendant.<br><br><br>AND RELATED COUNTERCLAIMS | Case No.:  16cv3085-JAH (RBB)<br><br>**PROTECTIVE ORDER** |

The Court recognizes that at least some of the documents and information ("materials") being sought through discovery in the above-captioned action are, for competitive and other reasons, normally kept confidential by the parties.  The parties in this action are to comply with the terms of this Protective Order ("Order").

The materials to be exchanged throughout the course of the litigation between the parties may contain trade secret or other confidential information, research, technical, cost, price, marketing or other commercial information, as is contemplated by Federal

Rule of Civil Procedure 26(c)(7). The purpose of this Order is to protect the confidentiality of such materials as much as practical during the litigation.

THEREFORE:

## DEFINITIONS

1.      The term "Confidential Information" will mean and include information contained or disclosed in any materials, including documents, portions of documents, answers to interrogatories, responses to requests for admissions, trial testimony, deposition testimony, and transcripts of trial testimony and depositions, including data, summaries, and compilations derived therefrom that is deemed to be Confidential Information by any party to which it belongs.

2.      The term "Highly Confidential" will mean and include any information which belongs to a Designating Party who believes in good faith that the Disclosure of such information to a non-Party would create a substantial risk of serious financial or other injury that cannot be avoided by less restrictive means.

3.      "Highly Confidential Materials" will mean and include any Documents, Testimony, or Information, as defined below, designated as "Highly Confidential" pursuant to the provisions of this Protective Order.

4.      The term "materials" will include, but is not limited to:  documents; correspondence; memoranda; bulletins; blueprints; specifications; customer lists or other material that identify customers or potential customers; price lists or schedules or other matter identifying pricing; minutes; telegrams; letters; statements; cancelled checks; contracts; invoices; drafts; books of account; worksheets; notes of conversations; desk diaries; appointment books; expense accounts; recordings; photographs; motion pictures; compilations from which information can be obtained and translated into reasonably usable form through detection devices; sketches; drawings; notes (including laboratory notebooks and records); reports; instructions; disclosures; other writings; models and prototypes and other physical objects.

1      5.    The term "counsel" will mean outside counsel of record, and other

2  attorneys, paralegals, secretaries, and other support staff employed in the law firms

3  identified below: Arena Hoffman, LLP. Counsel also includes in-house attorneys for

4  Plaintiff SolarCity Corporation.

5      6.    The term "Doria" will mean Defendant Daniel Doria.

6                      **GENERAL RULES**

7      7.    Each party to this litigation that produces or discloses any materials,

8  answers to interrogatories, responses to requests for admission, trial testimony, deposition

9  testimony, and transcripts of trial testimony and depositions, or information that the

10  producing party believes should be subject to this Protective Order may designate the

11  same as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

12      a.    Designation as "CONFIDENTIAL": Any party may designate

13  information as "CONFIDENTIAL" only if, in the good faith belief of such party and its

14  counsel, the unrestricted disclosure of such information could be potentially prejudicial to

15  the business or operations of such party.

16      b.    Designation as "HIGHLY CONFIDENTIAL": Any party may

17  designate information as "HIGHLY CONFIDENTIAL" only if, in the good faith belief of

18  such party and its counsel, the information is among that considered to be most sensitive

19  by the party, including but not limited to trade secret or other confidential research,

20  development, financial or other commercial information.

21      8.    In the event the producing party elects to produce materials for

22  inspection, no marking need be made by the producing party in advance of the initial

23  inspection. For purposes of the initial inspection, all materials produced will be

24  considered as "CONFIDENTIAL" and must be treated as such pursuant to the terms of

25  this Order. Thereafter, upon selection of specified materials for copying by the

26  inspecting party, the producing party must, within a reasonable time prior to producing

27  those materials to the inspecting party, mark the copies of those materials that contain

28  Confidential Information with the appropriate confidentiality marking.

9. Whenever a deposition taken on behalf of any party involves a disclosure of Confidential Information of any party:

    a. the deposition or portions of the deposition must be designated as containing Confidential Information subject to the provisions of this Order; such designation must be made on the record whenever possible, but a party may designate portions of depositions as containing Confidential Information after transcription of the proceedings; a party will have until fourteen (14) days after receipt of the deposition transcript to inform the other party or parties to the action of the portions of the transcript to be designated "CONFIDENTIAL" or HIGHLY CONFIDENTIAL".

    b. the disclosing party will have the right to exclude from attendance at the deposition, during such time as the Confidential Information is to be disclosed, any person other than the deponent, counsel (including their staff and associates), the court reporter, and the person(s) specified in Paragraph 13 below; and

    c. the originals of the deposition transcripts and all copies of the deposition must bear the legend "CONFIDENTIAL" or HIGHLY CONFIDENTIAL", as appropriate, and the original or any copy ultimately presented to a court for filing must not be filed unless it can be accomplished under seal, identified as being subject to this Order, and protected from being opened except by order of this Court.

10. All Confidential Information designated as "CONFIDENTIAL" or HIGHLY CONFIDENTIAL" must not be disclosed by the receiving party to anyone other than those persons designated within this order and must be handled in the manner set forth below and, in any event, must not be used for any purpose other than in connection with this litigation, unless and until such designation is removed either by agreement of the parties, or by order of the Court.

11. If the Court determines that the information does not qualify for the HIGHLY CONFIDENTIAL designation identified in Paragraph 7(b) above, the information shall be designated "CONFIDENTIAL" and disclosed to the non-designating party.

12. The right of any independent expert to receive any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" Information will be subject to the advance approval of such expert by the producing party or by permission of the Court. The party seeking approval of an independent expert must provide the producing party with the name and curriculum vitae of the proposed independent expert, and an executed copy of the form attached hereto as Exhibit A, in advance of providing any Confidential Information of the producing party to the expert. Any objection by the producing party to an independent expert receiving Confidential Information must be made in writing within fourteen (14) days following receipt of the identification of the proposed expert. Confidential Information may be disclosed to an independent expert if the fourteen (14) day period has passed and no objection has been made. The approval of independent experts must not be unreasonably withheld.

13. Information designated "CONFIDENTIAL" must be viewed only by counsel and (as defined in paragraph 5) of the receiving party, by Doria, by independent experts (pursuant to the terms of Paragraph 12), and by the additional individuals listed below, provided each such individual has read this Order in advance of disclosure and has agreed in writing to be bound by its terms:

        i.     Executives who are required to participate in policy decisions with reference to this action;

        ii.    Technical personnel of the parties with whom Counsel for the parties find it necessary to consult, in the discretion of such counsel, in preparation for trial of this action; and

        iii.   Stenographic and clerical employees associated with the individuals identified above.

14. With respect to material designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," any person indicated on the face of the document to be its originator, author or a recipient of a copy of the document, may be shown the same.

16cv3085-JAH (RBB)

15.     All information which has been designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by the producing or disclosing party, and any and all reproductions of that information, must be retained in the custody of Doria or the counsel for the receiving party identified in Paragraphs 5 and 6, except that independent experts authorized to view such information under the terms of this Order may retain custody of copies such as are necessary for their participation in this litigation.

16.     Before any materials produced in discovery, answers to interrogatories, responses to requests for admissions, deposition transcripts, or other documents which are designated as Confidential Information are filed with the Court for any purpose, the party seeking to file such material must seek permission of the Court to file the material under seal. No items will be electronically filed under seal without a prior application to, and order from, the judge presiding over the hearing or trial. Only when the judge presiding over the hearing or trial permits filing an item or items under seal may confidential material be filed with the Court under seal.

Whenever the Court grants a party permission to file an item under seal, a duplicate disclosing all nonconfidential information shall be filed and made part of the public record. The item may be redacted to eliminate confidential material from the public document. The public document shall be titled to show that it corresponds to an item filed under seal, e.g., 'Redacted Copy of Sealed Declaration of John Smith in Support of Motion for Summary Judgment.' The public redacted documents shall be filed within twenty-four hours of the Court order authorizing the filing of a document under seal.

17.     At any stage of these proceedings, any party may object to a designation of the materials as Confidential Information. The party objecting to confidentiality must notify, in writing, counsel for the designating party of the objected-to materials and the grounds for the objection. If the dispute is not resolved consensually between the parties within seven (7) days of receipt of such a notice of objections, the objecting party may move the Court for a ruling on the objection. The materials at issue

must be treated as Confidential Information, as designated by the designating party, until the Court has ruled on the objection or the matter has been otherwise resolved.

18. All Confidential Information must be held in confidence by those inspecting or receiving it, and must be used only for purposes of this action. Counsel for each party, and each person receiving Confidential Information must take reasonable precautions to prevent the unauthorized or inadvertent disclosure of such information. If Confidential Information is disclosed to any person other than a person authorized by this Order, the party responsible for the unauthorized disclosure must immediately bring all pertinent facts relating to the unauthorized disclosure to the attention of the other parties and, without prejudice to any rights and remedies of the other parties, make every effort to prevent further disclosure by the party and by the person(s) receiving the unauthorized disclosure.

19. No party will be responsible to another party for disclosure of Confidential Information under this Order if the information in question is not labeled or otherwise identified as such in accordance with this Order.

20. If a party, through inadvertence, produces any Confidential Information without labeling or marking or otherwise designating it as such in accordance with this Order, the designating party may give written notice to the receiving party that the document or thing produced is deemed Confidential Information, and that the document or thing produced should be treated as such in accordance with that designation under this Order. The receiving party must treat the materials as confidential, once the designating party so notifies the receiving party. If the receiving party has disclosed the materials before receiving the designation, the receiving party must notify the designating party in writing of each such disclosure. Counsel for the parties will agree on a mutually acceptable manner of labeling or marking the inadvertently produced materials as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" - SUBJECT TO PROTECTIVE ORDER.

21.     Nothing within this order will prejudice the right of any party to object to the production of any discovery material on the grounds that the material is protected as privileged or as attorney work product.

22.     Nothing in this Order will bar counsel from rendering advice to their clients with respect to this litigation and, in the course thereof, relying upon any information designated as Highly Confidential Information, provided that the contents of the information must not be disclosed.

23.     This Order will be without prejudice to the right of any party to oppose production of any information for lack of relevance or any other ground other than the mere presence of Confidential Information. The existence of this Order must not be used by either party as a basis for discovery that is otherwise improper under the Federal Rules of Civil Procedure.

24.     Nothing within this order will be construed to prevent disclosure of Confidential Information if such disclosure is required by law or by order of the Court.

25.     Upon final termination of this action, including any and all appeals, counsel for each party must, upon request of the producing party, return all Confidential Information to the party that produced the information, including any copies, excerpts, and summaries of that information, or must destroy same at the option of the receiving party, and must purge all such information from all machine-readable media on which it resides. Notwithstanding the foregoing, counsel for each party may retain all pleadings, briefs, memoranda, motions, and other documents filed with the Court that refer to or incorporate Confidential Information, and will continue to be bound by this Order with respect to all such retained information. Further, attorney work product materials that contain Confidential Information need not be destroyed, but, if they are not destroyed, the person in possession of the attorney work product will continue to be bound by this Order with respect to all such retained information.

26.     The restrictions and obligations set forth within this order will not apply to any information that: (a) the parties agree should not be designated Confidential

Information; (b) the parties agree, or the Court rules, is already public knowledge; (c) the parties agree, or the Court rules, has become public knowledge other than as a result of disclosure by the receiving party, its employees, or its agents in violation of this Order; or (d) has come or will come into the receiving party's legitimate knowledge independently of the production by the designating party. Prior knowledge must be established by pre-production documentation.

27. The restrictions and obligations within this order will not be deemed to prohibit discussions of any Confidential Information with anyone if that person already has or obtains legitimate possession of that information.

28. Transmission by email is acceptable for all notification purposes within this order.

29. This Order may be modified by agreement of the parties, subject to approval by the Court.

30. The Court may modify the terms and conditions of this Order for good cause, or in the interest of justice, or on its own order at any time in these proceedings. The parties prefer that the Court provide them with notice of the Court's intent to modify the Order and the content of those modifications, prior to entry of such an order.

31. This Court shall retain jurisdiction over any and all disputes arising under this Protective Order for a period of one (1) year after the conclusion of the case.

**IT IS SO ORDERED**.

Dated: December 21, 2017

_____
Hon. Ruben B. Brooks
United States Magistrate Judge

41

# **EXHIBIT A**

## **AGREEMENT TO BE BOUND**

I, _____ [print or type full name], declare and say that:

1. I am employed as _____ by _____.

2. I have read the Protective Order entered in the case of SolarCity Corporation v. Daniel Doria, Case No. 3:16cv3085-JAH(RBB), and have received a copy of the Protective Order.

3. I promise that I will use any and all "Confidential" or "Highly Confidential" information, as defined in the Protective Order, given to me only in a manner authorized by the Protective Order, and only to assist counsel in the litigation of this matter.

4. I promise that I will not disclose or discuss such "Confidential" or "Highly Confidential" information with anyone other than the persons described in Paragraphs 5, 6, 11 and 12, 13 of the Protective Order.

5. I acknowledge that, by signing this agreement, I am subjecting myself to the jurisdiction of the United States District Court for the Southern District of California with respect to enforcement of the Protective Order.

6. I understand that any disclosure or use of "Confidential" or "Highly Confidential" information in any manner contrary to the provisions of the Protective Order may subject me to sanctions for contempt of court.

I declare under penalty of perjury that the foregoing is true and correct.

Date:_____

Printed name:_____

Signature:_____