UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLARCITY CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>DANIEL DORIA,<br><br>        Defendant. | Case No.: 16cv03085 JAH-RBB<br><br>**FINDINGS OF FACT; CONCLUSIONS OF LAW AND JUDGMENT** |

## INTRODUCTION

Plaintiff, SolarCity Corporation, seeks monetary and injunctive relief against Defendant Daniel Doria for violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. section 1836, *et seq.*, violation of the California Uniform Trade Secrets Act, California Civil Code section 3426, *et. seq.*, and breach of contract asserting Defendant obtained its confidential customer information and used it to contact existing and prospective customers in an attempt to dissuade them from using SolarCity's products.

Connor Mack appeared on behalf of Plaintiff and Defendant Daniel Doria appeared *pro se* at a trial. After hearing testimony and argument at the trial, the matter was taken under submission.

Having considered the testimony and argument presented by the parties, this Court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1. Plaintiff, SolarCity, now known as Tesla, is a corporation in the business of manufacturing and selling solar energy products and services.

2. In 2016, SolarCity obtained customers by purchasing leads online, through retail partnerships and through its sales force. A lead is information including emails, phone numbers and addresses of customers who expressed some interest in solar products.

3. Various steps, including consultations and site visits, were taken by Plaintiff's many teams to convert a lead to a customer.

4. Defendant Daniel Doria was employed as an energy sales specialist for SolarCity from May 1, 2015 through October 21, 2016

5. Defendant signed SolarCity's offer of employment on May 1, 2015. The offer of employment required Doria to sign and comply with an At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement.

6. Defendant signed the At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement on May 1, 2015. As part of the agreement, Defendant agreed to keep company information confidential and not use the information except for the benefit of the company, during employment and thereafter. Defendant also agreed to keep third party information confidential and use it only as necessary to carry out work for the company.

7. In 2016, SolarCity maintained the SolarWorks database which contained information about current, potential, and canceled client projects.

8. SolarCity keeps its systems, including the SolarWorks database, confidential by making them accessible only through the internal network. Employees must use their credentials, a username and password unique to the employee, to access the database. Any remote access to the systems must be done through a virtual private network that encrypts the data. SolarCity took steps to restrict access to an employee

  based upon their role by permitting access only to data that was necessary to executing their job.

9. Customer information, including emails, addresses and phone numbers, was not readily available to those who did not need the information to execute their job function.

10. Plaintiff's software engineers worked to keep customer data, including leads, protected.

11. Software engineers identified security vulnerabilities within and between SolarCity's systems and worked with subject matter experts within those systems to ensure best practices were being used and to discuss measures to take to close any security gaps.

12. Prior to his termination, Defendant accessed SolarCity's SolarWorks database and created a Microsoft Word document named CONTACTS3.docx where he inputted the email addresses of approximately 1800 potential customers from the database.

13. Prior to his termination, Defendant created a Microsoft Word document called EMAIL.docx which contained the email addresses of 109 potential customers of SolarCity which he obtained from SolarCity's database.

14. Prior and subsequent to his termination, Defendant sent an email titled "Solar Warning" from ROBADLER2012@gmail.com, an email address he created, to approximately 1800 of SolarCity's potential customers.  He obtained the email addresses of the recipients of the email through his access to the SolarWorks database.

15.  The email contained inaccurate and disparaging information.

16. Plaintiff received correspondence from customers who received the email including one who was concerned about how the sender obtained their contact information, and wanted to discuss the issues addressed in the email.

17. Prior to his termination, Defendant sent an email to DANIELDORIA105@yahoo.com that contained email addresses of SolarCity employees.

18. Prior to his termination, Defendant sent a commission tracker from his work email to his private email.

19. It was not uncommon for SolarCity sales employees to have customer phone numbers on their personal cell phones for customer service purposes.

20. It was inappropriate for an employee to keep the customer numbers on their personal cell phones after the conclusion of their employment because SolarCity required employees to turn over all customer information, including contact information, at the termination of employment.

21. In 2016, SolarCity paid, on average, fifty (50) dollars per lead.

22. The cost of maintaining and maturing the leads and operations costs exceeded fifty (50) dollars per lead.

23. In 2016, approximately five (5) percent of leads purchased were ultimately converted into solar systems. Leads that were converted into solar systems generated approximately twenty-five thousand dollars ($25,000) per install system.

## CONCLUSIONS OF LAW

**Misappropriation of a Trade Secret**

1. A plaintiff may seek relief for misappropriation of trade secrets under federal law pursuant to 18 U.S.C. § 1836 and California state law pursuant to California Civil Code § 3426. The elements of a claim for trade secret misappropriation are substantially similar under federal law and California state law and, therefore, the claims can be analyzed together. *InteliClear, LLC v. Etc Global Holdings, Inc.*, 978 F.3d 653 (2020).

2. A "trade secret" is defined as all forms and types of information, including patterns, compilations, devices, formulas, methods, techniques or processes (1) for which the owner has made reasonable efforts to keep secret and (2) derives economic value,

actual or potential, from not being generally known to another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839; CA.CIV.CODE § 3426.1.

3. To prevail on a claim for trade secret misappropriation, Plaintiff must demonstrate, by a preponderance of the evidence, that (1) Plaintiff possessed a trade secret, (2) Defendant acquired a trade secret through improper means or disclosed or used a trade secret without consent and (3) the misappropriation caused Plaintiff damage. 18 U.S.C. § 1839; CA.CIV.CODE § 3426.1; *InteliClear, LLC*, 978 F.3d at 657-58.

4. Plaintiff demonstrates by a preponderance of the evidence that it's customer and potential customer information, including phone numbers, emails and addresses are trade secrets.

5. Defendant misappropriated Plaintiff's trade secrets when he acquired customer and potential customer emails, and other customer and employee information by accessing a restricted database for purposes outside his job duties and used the information to send an email to potential customers outside of the scope of his employment duties and responsibilities as an employee of SolarCity and without Plaintiff's permission.

6. Defendant's misappropriation of the potential customer information caused Plaintiff damage in the form of lost leads and potential customers.

**Breach of Contract**

7. To establish a breach of contract claim under California law, Plaintiff must prove (1) the existence of a contract, (2) Plaintiff's performance or excuse for non-performance, (3) Defendant's breach and (4) resulting damages. *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011).

8. Plaintiff signed the At-Will Employment, Confidential Investigation, Invention Assignment and Arbitration Agreement, in which he agreed to keep SolarCity's information and third-party information, including customer lists and contact

information and employee contact information, confidential and to use the information only as necessary to carry out his duties as an employee of SolarCity.

9. By entering into the At-Will Employment, Confidential Investigation, Invention Assignment and Arbitration Agreement, Defendant agreed to deliver to Plaintiff, at the end of his employment, any records, data, notes lists, correspondence or materials developed by him pursuant to his employment with SolarCity.

10. There is no evidence that Plaintiff did not perform all of its obligations under the contract.

11. Defendant breached the At-Will Employment Confidential Investigation, Invention Assignment and Arbitration Agreement when he accessed the SolarWorks database and obtained customer information, when he sent an email containing email addresses of SolarCity employees to his private email address, when he sent a commission tracker to his private email account, and when he sent the "Solar Warning" email from ROBADLER2012@gmail.com to approximately 1800 of SolarCity's potential customers prior and subsequent to his termination.

12. Defendant's breach caused Plaintiff damage in the form of lost leads and potential customers.

**Damages**

13. A plaintiff may recover damages for misappropriation of trade secrets under 18 U.S.C. § 1836 and California Civil Code § 3426.3.

14. Plaintiff proves, by a preponderance of the evidence, that it suffered actual damages as a result of Defendant's misappropriation of trade secrets and breach of contract in the amount of $2,250,000.

15. If misappropriation of trade secrets is willful and malicious, a court may award exemplary damages in an amount not more than 2 times the amount of actual damages. 18 U.S.C. § 1836(b)(3)(B); CA.CIV.CODE § 3426.3.

16. Defendant knowingly and intentionally violated his employment agreement by obtaining and using confidential information from Plaintiff's protected database demonstrating Defendant's misappropriation was willful.

17. The evidence does not demonstrate Defendant's misappropriation was with malice.

18. Plaintiff is not entitled to exemplary damages.

**Injunctive Relief**

19. A plaintiff may obtain an injunction to prevent actual or threatened misappropriation of a trade secret under 18 U.S.C. § 1836 and California Civil Code § 3426.2.

20. A plaintiff seeking a permanent injunction must demonstrate (1) it suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) the balance of hardships support a remedy in equity; and (4) the public interest is not disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

21. Plaintiff demonstrates a permanent injunction is warranted to enjoin Defendant from using or disclosing the information he gained through his employment with SolarCity, including customer lists, customer emails, other customer data, and employment and employee information.

## ORDER

Based on the Court's findings of fact and conclusions of law, IT IS HEREBY ORDERED:

1. Plaintiff is awarded damages in the amount of $2,250,000 against Defendant.

2. Defendant is permanently restrained and enjoined from directly or indirectly using, disclosing or making available to any person or entity other than Plaintiff, confidential information he gained through his employment at SolarCity, including, customer data and employment and employee information.

3. Defendant is permanently restrained and enjoined from making any disparaging remarks or causing others to make any disparaging remarks about SolarCity, Tesla, their officers, agents or employees regarding this matter and related business practices.

4. The Clerk of Court shall enter judgment accordingly.

DATED:    December 7, 2021

_____
JOHN A. HOUSTON
United States District Judge